# HURTADO ᴇᴛ ᴀʟ. *v.* UNITED STATES

No. 71–6742. Argued January 17, 1973—Decided March 5, 1973

Sᴛᴇᴡᴀʀᴛ, J., delivered the opinion of the Court, in which Bᴜʀɢᴇʀ, C. J., and Wʜɪᴛᴇ, Mᴀʀsʜᴀʟʟ, Bʟᴀᴄᴋᴍᴜɴ, Pᴏᴡᴇʟʟ, and Rᴇʜɴ-ǫᴜɪsᴛ, JJ., joined. Bʀᴇɴɴᴀɴ, J., filed an opinion concurring in part and dissenting in part, *post,* p. 591. Dᴏᴜɢʟᴀs, J., filed a dissenting opinion, *post,* p. 600.

*Albert Armendariz, Sr.,* argued the cause and filed a brief for petitioners.

*Solicitor General Griswold* argued the cause for the United States. With him on the brief were *Assistant Attorney General Petersen, Deputy Solicitor General Lacovara, Harry R. Sachse,* and *Jerome M. Feit.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The petitioners, citizens of Mexico, entered the United States illegally. To assure their presence as material witnesses at the federal criminal trials of those accused of illegally bringing them into this country, they were required to post bond pursuant to former Rule 46 (b) of the Federal Rules of Criminal Procedure. Unable to make bail, they were incarcerated.[1]

The petitioners instituted the present class action in the United States District Court for the Western District of Texas on behalf of themselves and others similarly incarcerated as material witnesses. Their complaint alleged that they, and the other members of their class, had been paid only $1 for every day of their confinement; that the statute providing the compensation to be paid witnesses requires payment of a total of $21 per day to material witnesses in custody; and that, alternatively, if the statute be construed to require payment of only $1 per day to detained witnesses, it violates the Fifth Amendment guarantees of just compensation and due process. They did not attack the validity or length of their incarceration as such, but sought monetary damages under the Tucker Act, 28 U. S. C. § 1346 (a)(2), for the

---

[1] Fed. Rule Crim. Proc. 46 (b), at the time this case arose, and before Rule 46 was amended to conform to the Bail Reform Act of 1966, provided:

"Bail for Witness.

"If it appears by affidavit that the testimony of a person is material in any criminal proceeding and if it is shown that it may become impracticable to secure his presence by subpoena, the court or commissioner may require him to give bail for his appearance as a witness, in an amount fixed by the court or commissioner. If the person fails to give bail the court or commissioner may commit him to the custody of the marshal pending final disposition of the proceeding in which the testimony is needed, may order his release if

lost compensation claimed, and equivalent declaratory and injunctive relief.

The statute in question, 28 U. S. C. § 1821, provides that a "witness attending in any court of the United States . . . shall receive $20 for each day's attendance and for the time necessarily occupied in going to and returning from the same . . . ." A separate paragraph of the statute entitles "a witness . . . detained in prison for want of security for his appearance, . . . in addition to his subsistence, to a compensation of $1 per day." [2]

he has been detained for an unreasonable length of time and may modify at any time the requirement as to bail."

[2] The statute provides in full:

"§ 1821. Per diem and mileage generally; subsistence.

"A witness attending in any court of the United States, or before a United States commissioner, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall receive $20 for each day's attendance and for the time necessarily occupied in going to and returning from the same, and 10 cents per mile for going from and returning to his place of residence. Regardless of the mode of travel employed by the witness, computation of mileage under this section shall be made on the basis of a uniform table of distances adopted by the Attorney General. Witnesses who are not salaried employees of the Government and who are not in custody and who attend at points so far removed from their respective residence as to prohibit return thereto from day to day shall be entitled to an additional allowance of $16 per day for expenses of subsistence including the time necessarily occupied in going to and returning from the place of attendance: *Provided,* That in lieu of the mileage allowance provided for herein, witnesses who are required to travel between the Territories and possessions, or to and from the continental United States, shall be entitled to the actual expenses of travel at the lowest first-class rate available at the time of reservation for passage, by means of transportation employed: *Provided further,* That this section shall not apply to Alaska.

"When a witness is detained in prison for want of security for his appearance, he shall be entitled, in addition to his subsistence, to a compensation of $1 per day.

"Witnesses in the district courts for the districts of Canal Zone,

The petitioners' complaint was grounded upon the theory that they were "attending in . . . court" throughout the period of their incarceration, since they were prevented from engaging in their normal occupations in order to be ready to testify. They argued that the $20 fee is compensation for the inconvenience and private loss suffered when a witness comes to testify, and that all of these burdens are borne by the incarcerated witness throughout his confinement. Urging that the compensation provisions should be applied as broadly as the problem they were designed to ameliorate, the petitioners argued that they were entitled to the $20 compensation for every day of confinement, in addition to the $1 a day that they viewed as a token payment for small necessities while in jail.

While they pressed this broad definition of "attendance," the petitioners also pointed to a narrower and more acute problem in administering the statute. Their amended complaint alleged that nonincarcerated witnesses are paid $20 for each day after they have been summoned to testify—even for those days they are not needed in court and simply wait in the relative comfort of their hotel rooms to be called. By contrast, witnesses in jail are paid only $1 a day when they are waiting to testify—even when the trial for which they have been detained is in progress. In short, the amended complaint alleged that the Government has construed the statute to mean that incarcerated witnesses must be physically present in the courtroom before they are eligible for the $20 daily compensation, but that nonincarcerated witnesses need not be similarly present to receive that amount.[3]

---

Guam, and the Virgin Islands shall receive the same fees and allowances provided in this section for witnesses in other district courts of the United States."

[3] By way of illustration, the witness who sets out on Monday in order to be available to testify on Tuesday; but who is not actually

In its answer, the Government conceded that each witness detained in custody is paid only $1 for every day of incarceration, and that the witness fee of $20 is paid only when such a witness is actually in attendance in court. The Government defended this practice as required by the literal words of the statute, and argued that the statute, as so construed, is constitutional.

In an unreported order, the District Court granted the Government's motion for summary judgment, and the Court of Appeals for the Fifth Circuit affirmed. 452 F. 2d 951. The Court of Appeals concluded that the $20 witness fee is properly payable only to those witnesses who are "in attendance" or traveling to and from court, and not to those who are incarcerated to assure their attendance. So interpreted, the court upheld the statute as constitutional. We granted certiorari, 409 U. S. 841, to consider a question of seeming importance in the administration of justice in the federal courts.

I

Both the petitioners and the Government adhere to their own quite contrary interpretations of § 1821—the petitioners maintaining that they are entitled to a $20 witness fee for every day of incarceration and the Government seeking to limit such payment to those days on which a detained witness is physically "in attendance" in court. We find both interpretations of the statute incorrect—the petitioners' too expansive, the Government's too restricted.[4]

called to the court for testimony until Friday; and who returns home on Saturday, will receive $20 for every day from Monday through Saturday. But the material witness who is incarcerated on Monday, held until Friday when he testifies, and then released, will receive one dollar for every day and an additional $20 only for Friday—the day he actually testifies.

[4] Both parties bolster their statutory interpretations with arguments based upon the statutory language. The petitioners point out

The statute provides to a "witness attending in any court of the United States" $20 "for each day's attendance." This perforce means that a witness can be eligible for the $20 fee only when two requirements are satisfied—when there is a court in session that he is to attend, and when he is in necessary attendance on that court.

The petitioners' interpretation of "attendance" as beginning with the first day of incarceration slights the statutory requirement that attendance be *in court*. A witness might be detained many days before the case in which he is to testify is called for trial. During that time, there is literally no court in session in which he could conceivably be considered to be in attendance. Over a century and a half ago Attorney General William Wirt rejected a similar construction of an almost identically worded law. He found that the then-current statute, which provided compensation to a witness "for each day he shall attend in court," [5] could not be construed

that incarcerated witnesses are not specifically excluded from those entitled to receive the $20 fee for attending court, though they are excluded from those entitled to the $16-a-day subsistence allowance. Hence, they conclude that Congress intended that they be eligible for the $20-per-day fee. But that argument proves no more than that Congress intended a detained witness to be eligible for the $20 fee for every day he is "attending" court; it does not indicate that Congress intended that every day of incarceration is the equivalent of a day attending court and compensable at the rate of $20 per day.

The Government supports its position by pointing out that the statute allocates to a detained witness $1 per day "in addition to his subsistence," not $1 a day in addition both to subsistence *and* to a witness fee of $20. But it is difficult to give any weight to this argument, since the Government acknowledges that a detained witness is to be paid $20 a day at least for days of physical attendance in court. Therefore, according to the Government's own interpretation, the $1-a-day clause can hardly be exclusive.

[5] "*And be it further enacted,* That the compensation to jurors and witnesses, in the courts of the United States, shall be as follows, to

to provide payment to incarcerated witnesses for every day of their detention:

"There is no court, except it be a court in session. There are judges; but they do not constitute a court, except when they assemble to administer the law. . . . Now I cannot conceive with what propriety a witness can be said to be *attending in court* when there is *no court,* and will be *no court* for several months.

"To consider a witness who has been committed to jail because he cannot give security to attend a future court, to be actually *attending the court* from the time of his commitment, and this for five months before there is any court in existence, would seem to me to be rather a forced and unnatural construction." 1 Op. Atty. Gen. 424, 427.

The Government, on the other hand, would place a restrictive gloss on the statute's requirement of necessary attendance; it maintains that the $20 compensation need be paid only for the days a witness is in actual physical attendance in court, and it concludes that a witness confined during the trial need only be paid for those days on which he is actually brought into the courtroom. But § 1821 does not speak in terms of "physical" or "actual" attendance, and we decline to engraft such a restriction upon the statute. Rather, the statute reaches those witnesses who have been summoned and are in necessary attendance on the court, in readiness to testify. There is nothing magic about the four walls of a courtroom.

_____

wit: to each grand and other juror, for each day he shall attend in court, one dollar and twenty-five cents; and for travelling, at the rate of five cents per mile, from their respective places of abode, to the place where the court is holden, and the like allowance for returning; to the witnesses summoned in any court of the United States, the same allowance as is above provided for jurors." Act of Feb. 28, 1799, c. 19, § 6, 1 Stat. 626.

Once a witness has been summoned to testify, whether he waits in a witness room, a prosecutor's office, a hotel room, or the jail, he is still available to testify, and it is that availability that the statute compensates. Non-incarcerated witnesses are compensated under the statute for days on which they have made themselves available to testify but on which their physical presence in the courtroom is not required—for example, where the trial is adjourned or where their testimony is only needed on a later day.[6] We cannot accept the anomalous conclusion that the same statutory language imposes a requirement of physical presence in the courtroom on witnesses who have been confined. Attorney General Wirt concluded that language similar to that at issue here, did not require any such physical presence:

> "But it was by no means my intention to authorize the inference . . . that, in order to entitle a witness to his *per diem* allowance under the act of Congress, it was necessary that he should be every day *corporeally present* within the walls of the court-room, and that the court must be every day in actual session. Such a puerility never entered my mind. My opinion simply was, and is, that before compensation could begin to run, the court must have commenced its session; the session must be legally subsisting, and the witness attending on the court—not necessarily in the court-room, but within its power, whenever it may require his attendance. . . . I consider

---

[6] Cf., *e. g., Hunter* v. *Russell,* 59 F. 964, 967–968; *Whipple* v. *Cumberland Cotton Mfg. Co.,* 29 F. Cas. 933 (No. 17,515); *Hance* v. *McCormick,* 11 F. Cas. 401 (No. 6,009).

The Department of Justice regulations repeat the statutory directive that a witness is to be paid $20 for "each day's attendance." Department of Justice, United States Marshal's Manual 340.14 (1971). There is no explicit requirement of physical presence in the courtroom.

a witness as attending on court to the purpose of earning his compensation, so long as he is in the power of the court whensoever it may become necessary to call for his evidence, although he may not have entered the court-room until such call shall have been made; and I consider the court in session from the moment of its commencement until its adjournment *sine die,* notwithstanding its intermediate adjournments *de die in diem."* 1 Op. Atty. Gen., at 426–427.

We conclude that a material witness who has been incarcerated is entitled to the $20 compensation for every day of confinement during the trial or other proceeding for which he has been detained.[7]   On each of those days,

---

[7] The legislative history of the compensation provision is unenlightening.   Though Congress early provided compensation for witnesses attending in the courts of the United States, no specific provision was made for incarcerated witnesses.   See, *e. g.,* Act of May 8, 1792, c. 36, § 3, 1 Stat. 277; Act of June 1, 1796, c. 48, § 2, 1 Stat. 492; Act of Feb. 28, 1799, c. 19, § 6, 1 Stat. 626.   In 1853, Congress provided for payment to a witness of $1.50 a day while attending court, and specifically indicated that a detained witness was to be paid $1 a day over and above his subsistence. Act of Feb. 26, 1853, c. 80, § 3, 10 Stat. 167.   In 1926, Congress eliminated the specific provision for compensation to detained witnesses and raised the per diem compensation for attendance in court. Act of Apr. 26, 1926, c. 183, §§ 1–3, 44 Stat. 323–324.

In the following two decades, Congress changed the levels of compensation but did not specifically provide for compensation to detained witnesses.   See Act of June 30, 1932, c. 314, § 323, 47 Stat. 413; Act of Mar. 22, 1935, c. 39, § 3, 49 Stat. 105; Act of Dec. 24, 1942, c. 825, § 1, 56 Stat. 1088.   When the Judicial Code was revised in 1948, the provision for per diem compensation to detained witnesses was again absent, Act of June 25, 1948, c. 646, § 1821, 62 Stat. 950, but was added the following year, Act of May 24, 1949, c. 139, § 94, 63 Stat. 103, with the explanation by the House Committee on the Judiciary that it had been "inadvertently omitted."   H. R. Rep. No. 352, 81st Cong., 1st Sess., 16.   By a separate measure, witness fees were increased.   Act of May 10, 1949,

the two requirements of the statute are satisfied—there is a court in session and the witness is in necessary attendance. He is in the same position as a nonincarcerated witness who is summoned to appear on the first day of trial, but on arrival is told by the prosecutor that he is to hold himself ready to testify on a later day in the trial. The Government pays such a witness for every day he is in attendance on the court, and the statute requires it to pay the same per diem compensation to the incarcerated witness. Because the Court of Appeals upheld a construction of the statute that would allow the $20 to be paid to incarcerated witnesses only for those days they actually appear in the courtroom, its judgment must be set aside.[8]

---

c. 96, 63 Stat. 65. While the per diem fee, the subsistence fee, and the travel allowance have all been increased, the $1 a day for incarcerated witnesses has remained constant. See Act of Aug. 1, 1956, c. 826, 70 Stat. 798; Act of Mar. 27, 1968, Pub. L. 90–274, § 102 (b), 82 Stat. 62.

The petitioners urge that this history of steadily increasing fees at least indicates a congressional intent to compensate witnesses fully for their lost time and income, and that since they suffer these losses throughout the period of incarceration they ought to receive the $20 for every day of confinement. But Congress recognized that witness fees could not fully compensate witnesses for their lost time or income. See, e. g., S. Rep. No. 891, 90th Cong., 1st Sess., 36; S. Rep. No. 187, 81st Cong., 1st Sess., 2. The petitioners point to no hint in any of the reports on the various changes in compensation levels which could justify the conclusion that Congress intended to provide more than $1 a day to detained witnesses for the period of their pretrial confinement.

[8] It was also error to affirm the summary judgment for the Government because there was a genuine issue of material fact whether the petitioners had ever been paid for the days that they actually attended court. See Fed. Rule Civ. Proc. 56 (c); *Arenas* v. *United States* 322 U. S. 419, 432–434; *Sartor* v. *Arkansas Natural Gas Corp.*, 321 U. S. 620, 623–629. They alleged in their amended complaint that on many occasions they testified for the Government and were not paid $20 a day for such testimony. The Government

## II

The petitioners argue that if § 1821 provides incarcerated witnesses only a dollar a day for the period before the trial begins, then the statute is unconstitutional. We cannot agree.

As noted at the outset, the petitioners do not attack the constitutionality of incarcerating material witnesses, or the length of such incarceration in any particular case.[9] Rather, they say that when the Government incarcerates material witnesses, it has "taken" their property, and that one dollar a day is not just compensation for this "taking" under the Fifth Amendment. Alternatively, they argue that payment of only one dollar a day before trial, when contrasted with the $20 a day paid to witnesses attending a trial, is a denial of due process of law.

But the Fifth Amendment does not require that the Government pay for the performance of a public duty it is already owed. See *Monongahela Bridge Co.* v. *United States,* 216 U. S. 177, 193 (modification of bridge

---

agreed that they were entitled to that compensation, but contended in its answer that they had been so paid. No affidavits or other evidence was submitted to support that contention, and the Court of Appeals in affirming summary judgment for the Government did not comment on this clear factual dispute.

Since a remand is required, we also note that the District Court never explicitly ruled on the petitioners' motion to have this suit declared a class action under Fed. Rule Civ. Proc. 23, and the Court of Appeals did not discuss the issue. It will, of course, be appropriate on remand for the District Court to determine whether this suit was properly brought as a class action, and we accordingly express no view on that issue.

[9] See *Stein* v. *New York,* 346 U. S. 156, 184 ("The duty to disclose knowledge of crime . . . is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness"); *Barry* v. *United States ex rel. Cunningham,* 279 U. S. 597, 616–618.

obstructing river); *United States* v. *Hobbs,* 450 F. 2d 935 (Selective Service Act); *United States* v. *Dillon,* 346 F. 2d 633, 635 (representation of indigents by court-appointed attorney); *Roodenko* v. *United States,* 147 F. 2d 752, 754 (alternative service for conscientious objectors); cf. *Kunhardt & Co.* v. *United States,* 266 U. S. 537, 540. It is beyond dispute that there is in fact a public obligation to provide evidence, see *United States* v. *Bryan,* 339 U. S. 323, 331; *Blackmer* v. *United States,* 284 U. S. 421, 438, and that this obligation persists no matter how financially burdensome it may be.[10] The financial losses suffered during pretrial detention are an extension of the burdens borne by every witness who testifies. The detention of a material witness, in short, is simply not a "taking" under the Fifth Amendment, and the level of his compensation, therefore, does not, as such, present a constitutional question. "[I]t is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the Government is bound to perform upon being properly summoned, and for performance of which he is entitled to no further compensation than that which the statutes provide. The personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public." *Blair* v. *United States,* 250 U. S. 273, 281.[11]

---

[10] "[I]t may be a sacrifice of time and labor, and thus of ease, of profits, of livelihood. This contribution is not to be regarded as a gratuity, or a courtesy, or an ill-required favor. It is a duty not to be grudged or evaded. Whoever is impelled to evade or to resent it should retire from the society of organized and civilized communities, and become a hermit. He who will live by society must let society live by him, when it requires to." 8 J. Wigmore, Evidence § 2192, p. 72 (J. McNaughton rev. 1961).

[11] There is likewise no substance to the petitioners' argument that the $1-a-day payment is so low as to impose involuntary servitude

Similarly, we are unpersuaded that the classifications drawn by § 1821 as we have construed it are so irrational as to violate the Due Process Clause of the Fifth Amendment. Cf. *Bolling* v. *Sharpe*, 347 U. S. 497, 499. The statute provides $20 per diem compensation to a witness who is in necessary attendance on a court, but that fee is payable to any witness, incarcerated or not. During the period that elapses before his attendance on a court, a witness who is *not* incarcerated gets no compensation whatever from the Government. An incarcerated witness, on the other hand, gets one dollar a day during that period, in addition to subsistence in kind.

We cannot say that there is no reasonable basis for distinguishing the compensation paid for pretrial detention from the fees paid for attendance at trial. Pretrial confinement will frequently be longer than the period of attendance on the court, and throughout that period of confinement the Government must bear the cost of food, lodging, and security for detained witnesses. Congress could thus reasonably determine that while some compensation should be provided during the pretrial detention period, a minimal amount was justified, particularly in view of the fact that the witness has a public obligation to testify. As the Court of Appeals correctly observed, "[G]overnmental recognition of its interest in having persons appear in court by paying them for that participation in judicial proceedings, does not require that it make payment of the same nature and extent to persons who are held available for participation in judicial proceedings should it prove to be necessary. That the government pays for one stage does not require that it pay in like manner for all stages." 452 F. 2d, at 955.

---

prohibited by the Thirteenth Amendment. Cf. *Griffin* v. *Breckenridge,* 403 U. S. 88, 104–105; *Jones* v. *Alfred H. Mayer Co.,* 392 U. S. 409, 437–444.

We do not pass upon the wisdom or ultimate fairness of the compensation Congress has provided for the pretrial detention of material witnesses. We do not decide "that a more just and humane system could not be devised." *Dandridge* v. *Williams,* 397 U. S. 471, 487. Indeed, even though it opposed granting the petition for certiorari in the present case, the Government found it "obvious" that "the situation is not a satisfactory one," and we were informed at oral argument that a legislative proposal to increase the per diem payment to detained witnesses will shortly be submitted by the Department of Justice to the Office of Management and Budget for review. But no matter how unwise or unsatisfactory the present rates might be, the Constitution provides no license to impose the levels of compensation we might think fair and just. That task belongs to Congress, not to us.

The judgment of the Court of Appeals is vacated, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BRENNAN, concurring in part and dissenting in part.

I am in full agreement with much of the majority's opinion. Construing 28 U. S. C. § 1821, which authorizes compensation at the rate of $20 per day to "[a] witness attending in any court of the United States . . . ," the Court holds today that a person held in jail as a material witness[1] is "attending in . . . court" each day that the

---

[1] Fed. Rule Crim. Proc. 46 (b), at the time this case arose, provided that where a witness' testimony was "material" in any criminal proceeding and where it might become impracticable to secure the presence of the witness by subpoena, the court might require the witness to give bail for his appearance. If the witness failed to give bail, the court might order his incarceration pending final disposition of the proceeding in which his testimony was needed.

pertinent judicial proceeding is underway, even if the witness is not physically present in the courtroom. But the majority also holds that a jailed witness is not "attending in" court prior to the inception of the judicial proceeding, even though he is held in custody for no other purpose than to insure his appearance to give testimony at trial. I reject that conclusion because, in my view, it works an obvious and severe hardship on an incarcerated witness, because it is compelled neither by the language nor the purposes of the statute, and because the statute so construed would be unconstitutional under the Due Process Clause of the Fifth Amendment.

I

In addition to providing compensation of $20 per day for "each day's attendance and for the time necessarily occupied in going to and returning from" the court where the witness is to testify, the statute also authorizes, in certain cases, an "additional allowance of $16 per day for expenses of subsistence." 28 U. S. C. § 1821. And the same statute states that "[w]hen a witness is detained in prison for want of security for his appearance, he shall be entitled, in addition to his subsistence, to a compensation of $1 per day."

In construing these statutory provisions, petitioners (citizens of Mexico who entered the United States illegally), respondent, and the Court agree on two points: first, that a jailed material witness is entitled to compensation of $1 per day for each day that he spends in confinement; and second, that a jailed material witness is entitled to the additional compensation of $20 per day for each day that a trial is in progress and that the witness is physically present in the courtroom. The point in contention is whether or not the jailed witness should receive the additional compensation of $20 per day during the time after he is taken into custody, but

before he is physically present in court. Petitioners contend that he should. Respondent contends that he should not. The Court holds that he *should* receive the compensation for each day that the trial is in progress (whether or not he actually appears in court), but that he *should not* receive it for the days spent in custody before the trial is under way.

The Court predicates its conclusion on a superficially plausible reading of the literal terms of the statute:

> "The petitioners' interpretation of 'attendance' as beginning with the first day of incarceration slights the statutory requirement that attendance be *in court*. A witness might be detained many days before the case in which he is to testify is called for trial. During that time there is literally no court in session in which he could conceivably be considered to be in attendance." *Ante,* at 583.

The Court holds, in other words, that if the court is not in session, then a jailed material witness cannot be said to be "attending *in . . . court.*" (Emphasis added.) But the correct interpretation of the phrase, "in court," is not as obvious as it would at first appear. Read literally, the phrase would appear to require that the witness spend the day within the four walls of the courtroom, or, at the very least, the courthouse. Yet the Court recognizes, and the Government concedes, that a witness can be "in court" even if he is in a hotel room or a restaurant. I share the view that physical presence in the courtroom is not required to bring a witness within the reach of the statute. But I cannot accept the Court's conclusion that a witness is "in court" or not "in court," depending on whether or not the judicial proceeding is technically under way.

Unfortunately, the Government has not described its practice in compensating witnesses under § 1821 with

the kind of specificity that would simplify our analysis. It would seem plausible, however, to assume that the practice might be as follows: A witness subpoenaed to appear on Tuesday morning may spend all of Monday en route to the courthouse, only to learn on Tuesday that the case will not be called as early as expected. If the witness waits in the witness room all day each day until the case is finally called on Friday, it would seem reasonable to assume that he is entitled to compensation for his attendance on Tuesday, Wednesday, and Thursday, even though the proceeding did not begin until Friday. Whatever the Government's practice in such a case, I would hold that the payment of compensation for those three days would be permitted, if not required, by the terms of the statute. Yet under the Court's rigid analysis of the phrase, "in court," it would be unlawful for the Government to compensate the witness, except for the days spent traveling to and from the courthouse, for any day except Friday. The Court is apparently bound to hold that notwithstanding the physical presence of the witness in the courthouse, he was not "in court" because the court was not yet in session.

The obvious shortcoming of the Court's analysis is its disregard, in construing the critical statutory phrase, of the purposes of the statute. The statute is grounded on the view that a subpoena to appear and give testimony will often entail substantial disruption of one's affairs, a loss of income, and considerable inconvenience. These dislocations, for which Congress has authorized compensation,[2] will exist whether a witness is required to wait in a witness room, a prosecutor's office, a courtroom, or

---

[2] The Government argues at length that Congress did not intend to provide full compensation to a witness or to insure the witness against all lost earnings. See Brief for United States 16–24. The Government does not dispute, however, that the congressional pur-

a hotel room. For that reason, the Court is correct in its conclusion that a witness may be "in court" for the purposes of the statute even though he is not, in fact, in the courthouse. But that same purposive analysis refutes the Court's suggestion that the pendency of a judicial proceeding is a precondition to the payment of witness fees. Surely the fact that the court is not yet in session is small comfort to the witness who is required to appear and wait for the calling of his case. His daily loss of income does not mysteriously increase as soon as the judge appears behind the bench. Nor, if he is unlucky enough to be held in custody for want of bail, does the infringement on his liberty become less burdensome or the assault on his dignity less severe. Whatever the status of the judicial proceeding, it remains clear that the witness is held in jail for a single purpose: to serve the interests of the court. And it is the unquestioned purpose of the statute to insure that witnesses who are inconvenienced to serve the interests of the court are compensated, at least in part, for the service they have given. I cannot ascribe to Congress the essentially irrational view that a day spent in attendance on a pending trial is inherently a day more worthy of compensation than a day spent in attendance on a trial that is not yet under way. Nothing should or was intended to turn on whether a trial is actually in progress.

## II

My conclusion that the majority has misconstrued the statute is fortified by the conviction that the statute, as interpreted by the Court, would be invalid under the Due Process Clause of the Fifth Amendment. *Bolling*

---

pose was to provide at least partial compensation for the expenses, dislocation, and income loss attributable to compelled attendance as a witness.

v. *Sharpe,* 347 U. S. 497 (1954). The majority discerns a

> "reasonable basis for distinguishing the compensation paid for pretrial detention from the fees paid for attendance at trial. Pretrial confinement will frequently be longer than the period of attendance on the court, and throughout that period of confinement the Government must bear the cost of food, lodging, and security for detained witnesses. Congress could thus reasonably determine that while some compensation should be provided during the pretrial detention period, a minimal amount was justified, particularly in view of the fact that the witness has a public obligation to testify." *Ante,* at 590.

In my view, that assertion is inadequate to the task of justifying this discriminatory classification scheme. First, as construed by the Court, the scheme clearly does not treat jailed material witnesses in a manner which is in any sense equivalent to the treatment of subpoenaed witnesses. Rather, the Court establishes two distinct classes of inconvenienced witnesses: those who are burdened by a subpoena to appear, and who receive compensation for each day of dislocation; and those who are burdened by a term in jail, but who are compensated only for the days of dislocation which follow the inception of trial. The Court apparently denies this inequality, asserting that "[d]uring the period that elapses before his attendance on a court, a witness who is *not* incarcerated gets no compensation whatever from the Government. An incarcerated witness, on the other hand, gets one dollar a day during that period, in addition to subsistence in kind." *Ante,* at 590. But the appropriate point of comparison is not the treatment of incarcerated witnesses before trial with the treatment of nonincarcerated wit-

nesses before trial. The statement that a subpoenaed witness receives no compensation for the period which precedes the onset of trial is true but irrelevant. Naturally the witness receives no compensation; he has sustained no injury. By hypothesis, the subpoena directs the witness to appear at a time when trial is at least scheduled to begin. In practical effect, therefore, the subpoenaed witness is compensated in full for each day of inconvenience, while the jailed witness may endure the "inconvenience" of a lengthy term in jail and receive significant compensation only for the days of confinement which happen to coincide with trial.

Moreover, this discrimination against jailed witnesses cannot be justified by reference to the fact—again, true but irrelevant—that the "witness has a public obligation to testify." *Ante,* at 590. The identical "public obligation" is imposed on the subpoenaed witness, and the existence of the obligation does not rationalize the heavier burden placed on the jailed witness in seeking compensation for his days of dislocation. And since the jailed witness carries the same obligation to testify both before and after trial has begun, its existence does not explain a scheme that provides significant compensation only for days of confinement during trial.

If the statutory scheme is to be upheld, it can only be on the theory that Congress has made a rational attempt to impose some limits on the amount of money which will be paid out to any given witness under the scheme. I can assume that the imposition of such a ceiling on expenditures is, in itself, a permissible goal. And since witness fees could, in some instances, reach staggering amounts, I can assume that Congress has the power to impose an across-the-board cutoff—*e. g.,* $1,000 per witness—on the fees allowable under the Act. But these assumptions do not relieve us of the obligation to determine whether the particular approach Congress

has used in imposing a cutoff is sufficiently rational to withstand constitutional attack. Cf. *Dandridge* v. *Williams*, 397 U. S. 471, 483–487 (1970). I conclude that it is not.

As the Court construes the statutory scheme, a material witness who is held in jail for four months in anticipation of a one-day trial will receive in compensation $141— $1 per day for each of 120 days, and $21 for the day of trial. By contrast, a witness who is subpoenaed to appear on the first day of trial but who, as a result of preliminary motions, adjournment, and miscellaneous delays, is not called to appear until two weeks have passed, will receive $280 in compensation, plus a subsistence allowance. However legitimate the governmental interest in imposing some limit on the expenditure of money to witnesses, the mere assertion of that interest cannot save a classification scheme that pays to a witness who spends two weeks in a hotel a sum of money greatly in excess of the amount made available to one who spends four months in the less congenial atmosphere of a courthouse jail. I can see no rational basis for this appalling difference in treatment.[3]

---

[3] Of course, where the Government detains a material witness pending trial, its total financial burden is not limited to the payment of $1 per day under 28 U. S. C. § 1821. The Government also assumes the expense of feeding and housing the incarcerated witness. Nevertheless, I cannot conclude that this added expense affords a rational basis for imposing an arbitrary ceiling on the payment of witness fees to a jailed witness. First, the Government makes no attempt to justify the statute on this ground, and we are not advised of the marginal cost to the Federal Government of holding a material witness in an existing penal facility. Second, the legislative history of the scheme evidences no particular congressional concern for the costs of incarceration, nor any effort to limit the payment of witness fees because of this added expense. Third, even if the marginal costs of incarceration are substantial, that fact cannot explain the absence of any limits whatsoever on the witness fees that can be paid to a nonincarcerated witness. And since a nonincarcerated wit-

The classification scheme we uphold today cannot be considered a rational attempt to preserve the Government's financial resources.[4]   Regrettably, it seems to

ness may be eligible for a subsistence allowance of $16 per day in addition to the $20 daily fee, the amount of money involved can be very large indeed.  Finally, and most important, while the Government has an obvious interest in limiting its total expenditure on witnesses—including the payment of fees, subsistence allowances, and incarceration costs—that interest cannot explain the payment of higher per diem fees to nonincarcerated witnesses than to incarcerated witnesses.  Even if the cost of keeping a witness in jail is $36 per day, which is the amount paid each day to a nonincarcerated witness, it does not follow that the payments are equivalent from the standpoint of the witnesses.  The jailed witness is inconvenienced no less than the subpoenaed witness, yet his rate of compensation is dramatically, and inexplicably, less.

[4] Nor can the scheme be justified on the theory that one who is too poor to give bail deserves only minimal compensation because he is unlikely to incur any great financial loss during the period of incarceration.  The fact that a witness is unable to give bail is hardly an indication that he is unemployed.  In any case, the statute is designed to compensate the witness not only for the loss of income, but also for the inconvenience and disruption of his personal affairs.  Inconvenience is not the exclusive property of the rich.  Moreover, the witness who cannot give bail is likely to be the one most in need of compensation to pay the expenses his family will inevitably incur while he waits in jail for the beginning of trial.  As enacted by Congress, the scheme was thought to provide compensation in an amount that is "more or less arbitrary, but considered to be reasonably fair to the average witness."  S. Rep. No. 187, 81st Cong., 1st Sess., 2. There is no indication that Congress thought some witnesses were so poor that they could be deemed indifferent to compensation.

Thus, the Government's assertion that "payment of $21 per day would serve as a chance bonus" for persons like petitioners who presumably earn less than that amount per day, Brief for United States 31, misses the point of the statutory scheme.  By that reasoning, the scheme would offer the same "chance bonus" to a witness who earns $50,000 per year, but who is not required to perform a daily service to earn that income.  Wealth is not a guarantee that income loss is substantial, just as poverty is not a guarantee that the income loss is trivial.

me little more than an attempt to punish those who are unable to give bail as a guarantee of their appearance at trial, and who, almost by definition, lack the power and resources to remedy their unfortunate plight. As my Brother DOUGLAS points out, "[w]e cannot allow the Government's insistent reference to these Mexican citizens as 'deportable aliens' to obscure the fact that they come before us as innocent persons who have not been charged with a crime or incarcerated in anticipation of a criminal prosecution." *Post,* at 604. They have been held in custody only to insure their presence at trial. I would not impute to Congress an intent to penalize these petitioners by holding the injury they have suffered less worthy of compensation than the inconvenience to a witness who is subpoenaed to appear at trial. I would hold, consistently with a fair reading of the statute in light of its purposes, that petitioners are entitled to compensation at the rate of $21 per day for each day they spend in custody while awaiting the call to appear in court.

MR. JUSTICE DOUGLAS, dissenting.

In my view, petitioners, all indigents, have been subject to discrimination "so unjustifiable as to be violative of due process." *Bolling* v. *Sharpe,* 347 U. S. 497, 499.

Petitioners, citizens of Mexico allegedly brought into the United States illegally, belong to that class of persons who as material witnesses can be subpoenaed to testify. Each must suffer at least limited invasion of his personal liberty to fulfill his public obligation to provide evidence. See *United States* v. *Bryan,* 339 U. S. 323, 331; *Blair* v. *United States,* 250 U. S. 273, 281. Petitioners, however, also belong to a discrete subclass—those whose presence it might be impractical to secure by subpoena and thus were subject to detention pursuant

to former Fed. Rule Crim. Proc. 46 (b) [1] if they could not post bail. The deprivation they suffer is longer and more extensive than that of the witness merely subject to a subpoena. They may spend months in jail awaiting the few minutes or hours they will spend testifying. Unlike other witnesses, they are not free to come or go while the trial is not actually in progress. Nevertheless, the justification for infringing their liberty remains the same. Former Rule 46 (b) was conceived as a tool [2] to insure

---

[1] Rule 46 (b), at the time this case arose and before Rule 46 was amended to conform it to the Bail Reform Act of 1966, read:

"Bail for Witness.

"If it appears by affidavit that the testimony of a person is material in any criminal proceeding and if it is shown that it may become impracticable to secure his presence by subpoena, the court or commissioner may require him to give bail for his appearance as a witness, in an amount fixed by the court or commissioner. If the person fails to give bail the court or commissioner may commit him to the custody of the marshal pending final disposition of the proceeding in which the testimony is needed, may order his release if he has been detained for an unreasonable length of time and may modify at any time the requirement as to bail."

[2] Mr. Justice Black and Mr. Justice Frankfurter dissented from submission of the original Rules of Criminal Procedure. 323 U. S. 821.

Mr. Justice Black and I in 1966 opposed the submission of certain amendments to the Rules of Criminal Procedure to the Congress. Mr. Justice Black's statement is to be found at 383 U. S. 1032, mine at 383 U. S. 1089. We thought at the time that some of the amendments presented serious constitutional questions.

The fact that the Court approved the Rules without reading them or debating them or weighing their merits does not, of course, preclude a challenge to their constitutionality in a given case.

But the imprimatur of this Court is on the Rules, and that gives them mighty weight. It is possible to read former Rule 46 (b) as permitting release on personal recognizance. But experience has shown that judges have not so read it. The result, as I indicate in this opinion, is that former Rule 46 (b) has borne down heavily on indigents who would be good risks but could not put up the money to buy a bail bond. Former Rule 46 (b) as so construed—and as

that the witness is available to testify, and any time spent incarcerated is spent as a direct result of the obligation that burdens all material witnesses. The comparison we are concerned with, then, is between the compensation paid to the incarcerated witness during the entire period his freedom to come or go is curtailed and the compensation paid to a nonincarcerated witness during the entire period he is subject to restraint. Although it is true, as the majority notes, that the nonincarcerated witness is paid nothing at all while court is not in session, the two classes are hardly comparably situated at the time, for the nonincarcerated witness is not subject to any substantial restraint as a result of his subpoena.

Congress has seen fit to compensate all material witnesses at the per diem rate of $20 for each day's attendance "in any court" (as defined by the majority) and for the necessary travel time. 28 U. S. C. § 1821. Yet, Congress compensates those incarcerated pursuant to former Rule 46 (b) at the per diem rate of only $1. Thus, not only are petitioners subject to more extensive deprivation of personal freedom, they also are denied equivalent compensation while waiting to testify.[3] Because former

---

applied in the present case—is therefore plainly unconstitutional. Filling of the jails of San Antonio with men whose only crime is the desire to find work and holding them there at the caprice of the prosecutor is shocking, to say the very least—and traceable to the easy, offhand way in which the Court has seemingly approved many Rules which touch not only matters of public security but individual liberties as well.

[3] The Solicitor General asserts that "it is certainly not unreasonable or irrational for Congress to authorize a minimal sum as payment to deportable aliens. There is no indication that illegal aliens, like petitioners, even if employed, would have earned wages averaging $20 or $21 per day for a period of 30 or 60 days or longer." This prompts two comments. In explaining a predecessor of the current statute, the Senate Report stated:

"The amounts arrived at in this bill are considered to be more fair than presently existing amounts, although it is recognized that

Rule 46 (b) provided that only witnesses who failed to post bail might be incarcerated, this discrimination in practice affected just the indigent and resulted, therefore, in a suspect classification based upon wealth. This invidious discrimination against the poverty-stricken cannot be supported by some speculative rational justification. *Ortwein* v. *Schwab, post,* p. 661 (DOUGLAS, J., dissenting); *United States* v. *Kras,* 409 U. S. 434, 457 (opinion of DOUGLAS and BRENNAN, JJ.); *Boddie* v. *Connecticut,* 401 U. S. 371, 383 (DOUGLAS, J., concurring in result). Surely, the Government's desire to avoid the costs of compensation in addition to the increased costs of food, lodging, and security does not rise above that level.[4] See *Boddie* v. *Connecticut, supra,* at 382; *Shapiro* v. *Thompson,* 394 U. S. 618, 633.

The majority "cannot say that there is no reasonable basis for distinguishing the compensation paid for pretrial detention from the fees paid for attendance at trial." I am not certain I can agree even with that position. The magic transition period under the statute [5]

---

certain witnesses will not, under the proposed rates, be adequately compensated. In order to fairly compensate everyone appearing as a witness it would be necessary to have either a graduated scale of fees, or, leave the amount of such fees in the discretion of the judge. Neither was considered feasible, and therefore the amounts arrived at herein are more or less arbitrary, but considered to be reasonably fair to the average witness." S. Rep. No. 187, 81st Cong., 1st Sess., 2.

Also, if the statute is to be measured as it applies to aliens, it surely creates a suspect classification. See *Takahashi* v. *Fish & Game Comm'n,* 334 U. S. 410.

[4] For each day the Government compensates a witness at the per diem rate of $20, it also pays the witness $16 to cover subsistence expenses. I cannot believe that it costs the Government more than $16 a day to feed an incarcerated witness. In any event, the witness should not be taxed when he is imprisoned for the convenience of the Government.

[5] The majority tracks the legislative history of § 1821 and concludes that it is "unenlightening." When compensation was first

as construed by the majority is the beginning of trial. I find the distinction wholly arbitrary. I do not see how it bears any relevance to the quality of confinement; petitioners sacrifice their time waiting to testify whether or not court is in session.

*Griffin* v. *Illinois,* 351 U. S. 12, held that an indigent defendant is denied equal protection of the laws if he is barred from appealing on equal terms with other defendants solely because of his indigence. In *Bandy* v. *United States,* 82 S. Ct. 11, 7 L. Ed. 2d 9 (DOUGLAS, J., in chambers), I concluded that "no man should be denied release [pending trial or judicial review] because of indigence." *Id.,* at 13, 7 L. Ed. 2d, at 11. This principle seems ever clearer and more forceful to me in circumstances where the imprisoned have not been charged with or convicted of a crime. We cannot allow the Government's insistent reference to these Mexican citizens as "deportable aliens" to obscure the fact that they come before us as innocent persons who have not been charged with a crime or incarcerated in anticipation of a criminal prosecution. It is true, of course, that petitioners do not challenge the constitutionality of confining a material witness. But, in their prayer for relief, they seek to enjoin the Government "from any further incarceration of any person under such rule under the present interpretation of 28 U. S. C. § 1821 at one dollar ($1.00) per day total payment." I conclude that petitioners are entitled to this relief unless they are released on their personal recognizance.

---

paid to incarcerated witnesses in 1853, Act of Feb. 26, 1853, § 3, 10 Stat. 167, they were paid $1 per day, or 50¢ less than a witness merely attending court. No subsistence was paid, and we can assume that the differential related to this factor. Over the years, Congress has increased the compensation paid to material witnesses and added subsistence payments without increasing the compensation paid to incarcerated witnesses. Congress has not advanced any justification.