**FEDERAL INSURANCE COMPANY, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 501–85C.

United States Claims Court.

Jan. 23, 1987.

Robert G. Post, New York City, attorney of record, for plaintiffs. Jeffrey S. Leonard and Hendler & Murray, New York City, of counsel.

Jonathan S. Baker, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Michael Perkins, F.B.I., Washington, D.C., of counsel.

## OPINION

WIESE, Judge.

This case concerns approximately $1 million in cash, which represents the partial recovery of money stolen from an armored car company. Plaintiffs, insurance companies who claim the money by virtue of assignments of ownership rights, contend that the Government's retention of this money for purposes of an ongoing criminal investigation constitutes a taking of property and a denial of due process under the Fifth Amendment. The Government has moved to dismiss the complaint on several grounds. Plaintiffs oppose the motion and move for summary judgment. Briefs have been filed, and argument was heard on December 22, 1986. The court now grants defendant's motion to dismiss and denies plaintiffs' motion for summary judgment.

## FACTS

On December 12, 1982, an audacious gang of thieves stole more than $10 million by staging a fake robbery of a Sentry Armored Courier Corporation warehouse in the Bronx, New York City. Plaintiffs in this suit are the insurance companies who compensated Sentry customers for their

losses and took assignments of the customers' ownership rights.

Between February and June 1983, federal authorities recovered $960,319 of the stolen money in searches conducted at four separate locations. On the basis of this and other evidence, five conspirators were convicted in connection with the heist. Although the last of these convictions was affirmed by the Second Circuit Court of Appeals in October 1985, the whereabouts of the balance of the stolen money remains the subject of an ongoing investigation by law enforcement authorities.

In May 1983, and at various other times thereafter, plaintiffs requested the United States Attorney for the Southern District of New York to return the recovered money to them and to use some alternative means of preserving the money's evidentiary value. The United States Attorney has refused these requests, contending that the particular manner in which the bills are packaged is of critical importance in tracing the rest of the stolen cash.

Asserting that they have lost some $200,000 in interest during the time the money has remained in the Government's custody, plaintiffs have brought suit here alleging a taking of property for which just compensation is due and a violation of the due process clause of the Fifth Amendment. They seek the return of the money or its equivalent, plus interest.

### DISCUSSION

This case raises the novel question of whether, under certain circumstances, the Government can effect a taking by holding the property of an innocent bystander as evidence in a criminal investigation. As a general rule, a citizen has a public duty to provide evidence, and "this obligation persists no matter how financially burdensome it may be." *Hurtado v. United States*, 410 U.S. 578, 589, 93 S.Ct. 1157, 1164, 35 L.Ed.2d 508 (1973). As the Supreme Court has stated, "The personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public." *Id.* (citation omitted). Therefore, the Court

held in *Hurtado* that a material witness in a federal criminal trial was not entitled to compensation under the takings clause of the Fifth Amendment for the period he remained incarcerated (in lieu of bail) in order to assure his presence at the trial. *Id.*

Similarly, one circuit has held flatly that the takings clause "is not implicated by the legal seizure of property pursuant to a criminal investigation." *Dickens v. Lewis*, 750 F.2d 1251, 1255 (5th Cir.1984); *see also King v. United States*, 292 F.Supp. 767, 773 (D.Colo.1968) (retention of firearms for purpose of Warren Commission investigation into assassination of President Kennedy was not a taking, but "mere custody" of the property).

It is not necessary at this time, however, to address whether the extended holding of valuable property for evidentiary purposes can, in some circumstances, impose burdens on the rightful owner so onerous that "'justice and fairness' require that they be borne by the public as a whole." *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 14, 104 S.Ct. 2187, 2196, 81 L.Ed.2d 1 (1984); *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). As the Supreme Court has repeatedly noted, determining when Government action rises to the level of a taking requires an ad hoc inquiry into such factors as the character of the action, its economic impact and the extent of its interference with reasonable, investment-backed expectations. *Kaiser Aetna v. United States*, 444 U.S. 164, 179, 100 S.Ct. 383, 392, 62 L.Ed.2d 332 (1979); *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 122, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 n. 12, 102 S.Ct. 3164, 3176 n. 12, 73 L.Ed.2d 868 (1982) (temporary invasion of property rights is subject to "complex balancing process").

These factors cannot be balanced, however, until the Government takes a "final, definitive position" establishing the magnitude of its intrusion on property rights. *Williamson County Regional Planning*

*Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 3119, 87 L.Ed.2d 126 (1985). The reason for this finality requirement is that during administrative review "a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions." *Id.* at 3117 (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 297, 101 S.Ct. 2352, 2371, 69 L.Ed.2d 1 (1981)). Therefore a taking claim based upon zoning regulations that are subject to variance procedures is not ripe until the plaintiff seeks a variance before the zoning commission. *Williamson County*, 105 S.Ct. at 3119–21. Similarly, a plaintiff must actually be denied a permit before he may assert that regulations respecting the use of his land constitute a taking. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 459, 88 L.Ed.2d 419 (1985); *see also Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *Penn Central*, 438 U.S. at 136–37, 98 S.Ct. at 2665.

■ In this case, the United States Attorney is not the final authority on the use of property for evidentiary purposes. Rather, property held as evidence is in the constructive possession of the district court, and the prosecution's retention of evidence is "subject to the proper exertion of the disciplinary powers of the court." *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 355, 51 S.Ct. 153, 157, 75 L.Ed. 374 (1931). The inherent supervisory powers of the district court extend to evidence lawfully held—before or after trial—for purposes of an ongoing criminal investigation. *United States v. Premises Known As 608 Taylor Avenue*, 584 F.2d 1297, 1302 (3d Cir.1978); *Shea v. Gabriel*, 520 F.2d 879, 882 (1st Cir.1975); *see generally United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir.1985) (district court has power

after trial to return money stolen in bank robbery to insurance company-assignee).

■ In determining whether lawfully seized evidence should be returned to its owner, the district court may balance the Government's need for the evidence against the burden imposed on an innocent owner by a lengthy investigation. *608 Taylor Avenue*, 584 F.2d at 1303; *Shea*, 520 F.2d at 882. Specifically, the court can consider whether the evidentiary value of the property can be preserved by some alternative means, such as photographs. *608 Taylor Avenue*, 584 F.2d at 1303–04. Thus, the district court has ultimate authority to determine the magnitude of the Government intrusion on property interests that is necessary to meet the needs of the judicial system.

■ For the reason just stated, plaintiffs in this case are in a position analogous to that of a property owner who must exhaust variance or permit procedures before bringing a taking claim. That is to say, until the district court adjudicates a motion by plaintiffs for return of their property, the final determination necessary for a taking has not been reached, and this court must decline jurisdiction.[1] The question of whether—and under what circumstances—retention of property for evidentiary purposes can impose burdens on the property owner so extreme as to give rise to a taking can be addressed only after the district court has had an opportunity to exercise its supervisory powers over the retention of the evidence. The district court's balancing of the needs of the criminal justice system against the hardship upon plaintiffs could well produce an accommodation of interests that would obviate entirely the need for this court to address the constitutional issue. The potential for such a solution confirms the conclusion that the taking issue is not ripe for resolution.

■ As to plaintiffs' claim for relief under the due process clause, it is clear that

1. The decision relied upon by plaintiffs, *Lowther v. United States*, 480 F.2d 1031 (10th Cir. 1973), is not to the contrary. In that case, the court concluded that compensation for a taking was appropriate where evidence had been forfeited and actually destroyed. *Id.* at 1032–33.

The decision was expressly limited to that narrow factual setting. *Id.* at 1035; *accord Jaekel v. United States*, 304 F.Supp. 993, 997 (S.D.N.Y. 1969) (compensation appropriate where forfeiture procedure invalid).

such a claim is not within this court's jurisdiction. It is settled that a suit in this court can only be based on a source of substantive law that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Mitchell*, 463 U.S. 206, 217, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983); *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)). Because the due process clause cannot be read to mandate the payment of money, no claim arising under that clause is within this court's jurisdiction. *United States v. Connolly*, 716 F.2d 882, 887, 79 L.Ed.2d 740 (Fed.Cir. 1983), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414 (1984); *Alabama Hospital Ass'n v. United States*, 228 Ct.Cl. 176, 180–81, 656 F.2d 606, 609 (1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982); *Carruth v. United States*, 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980).

## CONCLUSION

For the reasons stated, defendant's motion to dismiss is granted, and plaintiffs' motion for summary judgment is denied. The complaint shall be dismissed.

