

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2003

# Jones v. Phila Pol Dept

Precedential or Non-Precedential: Non-Precedential

Docket 01-4202

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Jones v. Phila Pol Dept" (2003). *2003 Decisions.* Paper 842.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/842

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4202

RONITA JONES; RASHFORD GALLOWAY; RUBENS LEACAL; UNITED
SOLUTIONS, INC., T/A (A-Z VARIETY STORE)

v.

PHILADELPHIA POLICE DEPARTMENT; RICHARD NEAL,
POLICE COMMISSIONER; JOHN COYNE, POLICE OFFICER;
SIX UNKNOWN POLICE OFFICERS

CITY OF PHILADELPHIA,
Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 99-cv-00455
District Judge: The Honorable James T. Giles

Argued January 13, 2003

Before: SCIRICA, BARRY, and SMITH, Circuit Judges

(Opinion Filed: January 29, 2003 )

Terry L. Pugh, Esquire (Argued)
Suite 800
1315 Walnut Street
Philadelphia, PA 19107

Attorney for Appellees
Richard G. Feder, Esquire (Argued)

Jane L. Istvan, Esquire
City of Philadelphia Law Department
17th Floor
1515 Arch Street
One Parkway
Philadelphia, PA 19102

<u>Attorneys for Appellant</u>

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

Because we write primarily for the parties and the District Court who are thoroughly familiar with the facts of this case, we see no need to reprise those facts here. Suffice it to say that this case arose out of a search of a building owned by corporate plaintiff United Solutions, Inc. The search was conducted by police officers employed by the defendant City of Philadelphia. The three individual plaintiffs – Ronita Jones, Rashford Galloway and Rubens Leocal – were inside the building at the time of the search and were detained while it was conducted. The individual plaintiffs alleged that their detention violated the Fourth Amendment and that they sustained personal injuries which constituted a taking for purposes of the Fifth Amendment; the corporate plaintiff alleged that damage done to the building during the search constituted a taking.

The jury found in favor of plaintiffs on their Fourth Amendment claims, finding that they proved that it was a policy, practice or custom of the City of Philadelphia to subject

2

occupants of premises being searched to unreasonable periods and conditions of detention. The jury also found that, as a result of the City's policy, plaintiffs Galloway and Jones suffered $10,000 worth of damage and plaintiff Leocal suffered $5,000 worth of damage.

The jury also found in favor of plaintiffs on their Fifth Amendment claims, finding, first, that the store was damaged as a result of the search and that the damages amounted to $500, which it awarded to plaintiff United Solutions. Second, the jury found in favor of the three individuals on their takings claims and awarded $10,000 to plaintiff Jones for physical damage to her body, $15,000 to plaintiff Galloway, and $10,000 to plaintiff Leocal.

The City has appealed, arguing that the District Court erred in not granting judgment as a matter of law in its favor on the Fourth and Fifth Amendment claims. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331; this Court has jurisdiction under 28 U.S.C. § 1291. We will reverse. We will reverse with regard to the Fourth Amendment claims because no evidence was presented at trial from which a reasonable juror could conclude that the City had a policy or custom of detaining innocent bystanders for unconstitutionally long periods of time or under unconstitutional conditions during otherwise legal searches.[1] We will reverse with regard to the Fifth Amendment takings

---

[1]Because no evidence of such a policy or custom was presented at trial, we will not reach the City's additional arguments (1) that it was entitled to judgment as a matter of law because the restraint of the plaintiffs was reasonable or (2) that it is entitled to a new trial because the District Court's instruction on no-knock warrants was misleading and prejudicial.

claims because there can be no takings claim for damage to one's body, as the United States may not legally "take" its citizens' bodies, even if it compensates them therefore, and there can be no takings claim for the damage done to the plaintiff corporation's property under the circumstances present here.

The City argues that the District Court erred in denying its motion for judgment as a matter of law on plaintiffs' Fourth and Fifth Amendment claims. See Fed. R. Civ. P. 50(a). Judgment as a matter of law should only be granted "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).

With regard to plaintiffs' Fourth Amendment claims, innocent persons can be detained for reasonable periods and under reasonable conditions during searches to protect their safety and the safety of the officers. Torres v. United States, 200 F.3d 179, 185 (3d Cir. 1999). In order to prevail against the City, plaintiffs had to show that the City had a formal or informal policy or custom of detaining such persons for unreasonable periods or under unreasonable conditions, such that the City could be said to be the moving force behind the harm done to them. Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

The following evidence of a policy or custom regarding the length and conditions of detention was presented at trial. Officer John Coyne testified that under certain circumstances individuals are restrained and handcuffed when the police enter a property,

4

but that excessive force is not to be used.  When asked to elaborate, he explained that "when you feel that you have information on past investigations of others that there is danger which weapons could be present, that is policy to secure the individuals' hands."  When asked how long an individual's hands could be secured, he explained that there is no time limit, but that individuals cannot be detained for an excessive or unreasonable amount of time.  He acknowledged that if an individual were handcuffed "for a long period of time . . . that there would have to be a reason for that, or you would be violating policy[.]"  Nothing in Officer Coyne's testimony would support a finding by a reasonable juror that the City of Philadelphia has a policy or custom of detaining individuals for amounts of time or under conditions which would violate the Fourth Amendment.

The only other evidence of any policy or custom with regard to detention was the testimony of Lieutenant Tom Wixted, who testified that it is not the policy of the Department to detain people for hours at a time.  He explained that it would be a violation of policy to detain a person for several hours without arresting him or her.  As with Officer Coyne's testimony, there is nothing in Lieutenant Wixted's testimony upon which a reasonable juror could base a finding that it was the City's policy to detain individuals for excessive amounts of time.  If anything, his testimony supports the opposite finding.

Turning to the Fifth Amendment takings claims, the City was also entitled to judgment as a matter of law on the individual plaintiffs' Fifth Amendment claims for personal injury because "to assert that one's body is private property that may be taken by the United States for any governmental purpose of any kind upon the payment of just

5

compensation is to contend for something so far contrary to our theory of government, the relationship of the government and citizens as to be untenable." Commers v. United States, 66 F.Supp. 943, 945 (D. Mont. 1946). See also Hurtado v. United States, 410 U.S. 578, 588-589 (1973)(a material witness detained prior to trial does not have a takings claim).

The City was also entitled to judgment as a matter of law on the plaintiff corporation's Fifth Amendment claim for damage done during the search. This case involves only a temporary physical invasion of private property by the government. Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 430 (1982)(noting "the distinction between a permanent physical occupation, a physical invasion short of an occupation, and a regulation that merely restricts the use of property."). As the Loretto Court explained, every physical invasion is not a taking. Loretto, 458 U.S. at 436. Temporary invasions are subject to a "complex balancing process to determine whether they are a taking . . . [because] they do not absolutely dispossess the owner of his rights to use, and exclude others from, his property." Id.

"[R]esolving whether public action works a taking is ordinarily an ad hoc inquiry in which several factors are particularly significant -- the economic impact of the regulation, the extent to which it interferes with investment-backed expectations, and the character of the governmental action." Id. at 432 (citing Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978)). In this case, the economic impact of the government action was minimal – the jury found that the police caused just $500 worth of damage – and there was no evidence that the plaintiff corporation invested in the property at issue with the

6

expectation that it would remain free of legal searches founded upon probable cause.

Turning to the "character of the governmental action" prong, a "'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good. <u>Penn Central,</u> 438 U.S. at 124. Notwithstanding this general rule, in this case "the government's activity was so short lived as to be more like the tort of trespass than a taking of property." <u>Hendler v. United States</u>, 952 F.2d 1364, 1371 (Fed. Cir. 1991). The <u>Hendler</u> Court contrasted a situation in which a government vehicle parked one day on an individual's land while the driver ate lunch, which would be more like a trespass, with a situation in which the government established a long term storage lot for vehicles and equipment, which would be more like a taking. <u>Id.</u>

The two-hour-long occupation of the plaintiff corporation's property which occurred in this case falls into the trespass category. In addition to – and partly because of – the short duration of the "invasion," it did not interfere with many, even most, of the traditional rights of property owners. Moreover, a temporary seizure of property in order to search that property is a permissible exercise of the government's police – as opposed to its eminent domain – power and neither this Court nor the parties have found a federal case in which a court has held that such a seizure constituted a taking under the federal

7

constitution.[2]  See Lawmaster v. Ward, 125 F.3d 1341, 1351 (10th Cir. 1997)(plaintiff who alleged that officers ransacked his home during a search failed to "allege any facts showing how his property was taken for public use in violation of the Fifth Amendment.").  As the Supreme Court has recently noted, "orders temporarily prohibiting access to crime scenes, businesses that violate health codes, fire-damaged buildings, or other areas that we cannot now foresee . . . have long been considered permissible exercises of the police power[]" which do not entitle the individuals affected to compensation.[3]  Tahoe-Sierra Pres. Council,

---

[2]In the forfeiture context, the Eighth Circuit has explained that ". . . the forfeiture of contraband is an exercise of the government's police power, not its eminent domain power. A forfeiture is not subject to the Fifth Amendment's Takings Clause when it deprives an innocent owner of his property . . . ." United States v. $7,990.00 in U.S. Currency, 170 F.3d 843, 845-846 (8th Cir. 1999). See also Bennis v. Michigan, 516 U.S. 442, 452-453(1996)("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.").

[3]Plaintiffs argue that their claim is supported by National Bd. of Young Men's Christian Ass'ns v. U. S., 395 U.S. 85, 92 (1969)("YMCA"), in which the Supreme Court held that the plaintiff was not entitled to recover under the Takings Clause for damage done to one of its buildings which had been occupied by United States troops during a riot, because the troops were acting primarily in defense of the building, as opposed to primarily for the public good.  The Court held that where a "private party is the particular intended beneficiary of the governmental activity, 'fairness and justice' do not require that losses which may result from that activity 'be borne by the public as a whole,' even though the activity may also be intended incidentally to benefit the public . . . ." YMCA, 395 U.S. at 92.  Arguably, this broad dictum would support a takings claim where an  individual was injured during a search and was not the "intended beneficiary" of the search.  The YMCA case is distinguishable from this case.  First, the plaintiff corporation may not have been the intended beneficiary of the search, but presumably it would have benefitted had the police found and put an end to criminal activity occurring in its building.  Even if the corporation was not the intended beneficiary, the argument that fairness and justice require the public to reimburse it for its losses is mitigated by the fact that the damages were sustained as a result of a presumably reasonable search that was reasonably executed based upon a judicial finding of probable

8

Inc. v. Tahoe Reg'l Planning Agency, 122 S.Ct. 1465, 1485 (2002). See also Hurtado, 410 U.S. at 588-589 ("public duties" such as the giving of testimony do not trigger just compensation requirements); United States v. Friedman, 532 F.2d 928, 935 (3d Cir. 1976)(applying Hurtado to preclude a claim by an innocent bank forced to undertake a costly records search on behalf of a federal agency). The temporary occupation of plaintiff's store is analogous to a temporary denial of access were it a crime scene. The corporation is not entitled to compensation because it was its "public duty" to submit to a search upon probable cause.

The judgment of the District Court will be reversed and the case will be remanded for entry of judgment in favor of appellant.


TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.


 /s/ Maryanne Trump Barry
Circuit Judge

---

18      cause to believe that a crime was being committed inside.