**PITTSBURGH NATIONAL BANK, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 84–3777.**

United States Court of Appeals, Third Circuit.

Argued July 19, 1985.

Decided Aug. 30, 1985.

Gary P. Hunt (argued), Tucker Arensberg, P.C., Pittsburgh, Pa., for appellee.

J. Alan Johnson, U.S. Atty., Paul J. Brysh (argued), Constance M. Bowden, Asst. U.S. Attys., Pittsburgh, Pa., for appellant.

Before SEITZ, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This is an appeal from an order of the district court granting summary judgment in favor of the plaintiff, Pittsburgh National Bank ("PNB") in an action brought pursuant to the reimbursement provisions of the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422 (1982). Subject matter jurisdiction is based on 12 U.S.C. § 3416 (1982). This court has jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

### I.

The following facts are either stipulated to or uncontested. On January 10, 1983, a federal grand jury issued subpoenas duces tecum to PNB, requiring that it produce

[a]ll books, records, correspondence, and/or memorandum in the name of American Investors of Pittsburgh, Inc., American Investors Mutual Shares, Inc., John Bruno, John W. Mendicino, and Charles Krzywicki, officers and/or agents of American Investors, Inc., and/or American Investors Mutual Shares, Inc.

PNB complied with the subpoenas and subsequently submitted an invoice to the government in the amount of $6,955.45, for costs incurred in the production of the requested documents. The government reimbursed a total of $1,415.05 to PNB, but refused payment of the balance, maintaining that such amounts were attributable to the costs of producing corporate records for which PNB was not entitled to reimbursement.

PNB commenced this action in July of 1984 to compel reimbursement of its remaining expenses. The complaint alleged that all of the records supplied by PNB pertained to the three named individuals, all of whom were customers of PNB. PNB therefore claimed that it was entitled to reimbursement pursuant to 12 U.S.C. § 3415. The government, on the other hand, maintained that the unpaid invoices related to the costs of producing the financial records of American Investors of Pittsburgh, Inc. and American Investors Mutual Shares, Inc. (collectively "American Investors"). Moving for summary judgment, the government argued that section 3415 did not provide for reimbursement of the costs incurred in the production of corporate records. The district court disagreed, holding that corporate entities could be "customers" within the meaning of section 3415 and that there was a genuine issue of material fact as to whether American Investors was a customer of PNB.

The parties thereafter stipulated that American Investors "utilized certain services" of PNB for which the bank maintained financial records. Based on this stipulation, PNB filed a motion for summary judgment. The district court granted the motion and entered judgment in favor of PNB for $6,228.25, the full amount of PNB's remaining expenses plus attorneys fees.

## II.

### A. *Definition of a "Customer"*

■ The government contends that the district court erred in holding that a corporation can be a "customer" under section 3415. In pertinent part this section provides:

[A] Government authority shall pay to the financial institution assembling or providing *financial records pertaining to a customer* and in accordance with procedures established by this chapter a fee for reimbursement for such costs as are reasonably necessary and which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required or requested to be produced.

12 U.S.C. § 3415 (1982) (emphasis added). Section 3415 was enacted as part of the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422 (1982) (the "Act"). Generally, the Act was intended to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time accommodating legitimate law enforcement activities. H.R. Rep. No. 1383, 95th Cong., 2nd Sess. 33, *reprinted in* 1978 U.S.Code Cong. & Ad. News 9273, 9305.

A "customer" is defined under the Act as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution ...." 12 U.S.C. § 3401(5). A person is defined as "an individual or a partnership of five or fewer individuals." 12 U.S.C. § 3401(4) (1982).

Thus, the statutory language unambiguously points to a conclusion contrary to that reached by the district court. By its terms, the Act pertains only to the financial records of individuals and small partnerships. Only those entities are "customers" as defined by section 3401(5). It follows that a corporation is not a "customer" within the scope of the Act. Notably, at least two other courts of appeals have declined to expand the Act's coverage to include other entities, finding the limited definition of a customer to be dispositive. *See Spa*

*Flying Service, Inc. v. United States*, 724 F.2d 95, 96 (8th Cir.1984) (corporation not a "customer;" therefore, Act's authorization requirements inapplicable to corporate entities); *Donovan v. National Bank*, 696 F.2d 678, 683 (9th Cir.1983) (Act does not apply to financial records of employee benefit plan).

PNB does not dispute that the primary purpose of the Act is to protect the privacy rights of individuals and small partnerships. It further concedes that because corporations do not enjoy a similar expectation of privacy, the Act was drafted to limit applicability of its procedural protections to individual customers. PNB argues, however, that the reimbursement provision, section 1115(a) of the Act, was intended to serve an entirely different function. Its purpose, PNB contends, is to protect financial institutions from the expense of complying with government information requests and to curb government "fishing expeditions" by holding the agency which seeks access to the institution's records fully accountable for the costs of obtaining them. Limiting reimbursement to costs incurred in the production of an individual customer's records would largely undercut this purpose. Hence, PNB maintains that the term "customer" as used in section 3415 must be construed broadly to effectuate Congressional intent.

The position urged by PNB represents, in our view, an unprecedented departure from traditional rules of statutory construction. PNB has cited no authority for the proposition that a particular word, specifically defined in one section of an act, can have an entirely different meaning under another section of the same act. To the contrary, " '[a] definition which declares what a term 'means' ... excludes any meaning that is not stated.' " *Colautti v. Franklin*, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596 (1979) (quoting 2A C. Sands, Sutherland Statutory Construction § 47.07 (4th ed. Supp.1978)).

PNB cites a number of cases which suggest that a court may exercise some flexi-

bility in construing a statute where the literal or usual meaning of its words "'would thwart the obvious purpose of the statute.'" *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (quoting *Helvering v. Hammel,* 311 U.S. 504, 511, 61 S.Ct. 368, 371, 85 L.Ed. 303 (1941)). However, the Supreme Court has stressed that it is a "rare case[ ]" where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Indeed, as the Court recently reiterated:

> We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.

*Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

We have examined the legislative history of the Act and have found no express indication that Congress intended to shift the financial burden of producing corporate records to the government. Supplying information in connection with a criminal investigation is considered a public duty. Thus, the cost of complying with a grand jury subpoena has traditionally been placed upon the subpoenaed party. *See Hurtado v. United States,* 410 U.S. 578, 589, 93 S.Ct. 1157, 1164, 35 L.Ed.2d 508 (1973). Section 3415 provides a limited statutory exception to this general rule. Moreover, since the overriding purpose of the Act is to protect the privacy rights of individuals and small partnerships, Congress conceivably could have limited reimbursement to the costs of producing the financial records of those particular entities in order to curb "fishing expeditions" against them. Because we find no "clearly expressed legislative intention to the contrary," *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. at 108, 100 S.Ct. at 2056, the statutory definition of a "custom-

er" is controlling. Accordingly, we hold that a corporation is not a customer for the purpose of determining PNB's eligibility for reimbursement of the costs of producing certain corporate records.

### B. *"Pertaining to a Customer"*

Section 3415 provides for reimbursement to a financial institution of the costs incurred in producing "financial records pertaining to a customer." 12 U.S.C. § 3415 (1982). As an alternative ground for affirming the district court, PNB argues that it is entitled to reimbursement because the corporate records requested by the government "pertained to" a grand jury investigation of the three individuals named in the subpoena. It is undisputed that the three named individuals, Bruno, Mendicino and Krzywicki, were each customers of PNB. Additionally, the government has disclosed that the subpoenaed records were obtained, at least in part, in connection with a grand jury investigation of the individuals in their capacity as officers of American Investors. The grand jury was also investigating possible criminal activity on the part of the two American Investors corporations.

Thus, we are called upon to determine what Congress intended by the phrase "financial records pertaining to a customer." PNB contends that this language mandates reimbursement whenever records are sought in connection with an investigation directed at a customer. Hence, even though the records sought are those of another entity, the institution is entitled to reimbursement if the investigation triggering the information request pertains to a customer of the institution. In contrast, the government maintains that a financial institution can only be reimbursed for the costs its incurs in producing the customer's own financial records.

Although there is no definitive statement of Congressional intent, the government directs our attention to a portion of the legislative history relating to the definitions section of the Act:

> The definition of "financial records" and "customer" taken together, are intended to preclude application of the bill to any-

one other than the person to whose account information the government seeks access. They would exclude, for example, the endorsers of checks and guarantors of loans.

H.R.Rep. No. 1383, 95th Cong., 2nd Sess. 49, *reprinted in* 1978 U.S.Code Cong. & Ad.News 9273, 9321. Thus, the Act mandates the procedures by which an individual account holder may authorize or contest government access to his own financial records. Section 3415 contemplates reimbursement only when the financial institution assembles or provides the requested records "in accordance with procedures established by this chapter." 12 U.S.C. § 3415 (1982). Because the procedures established under the Act relate only to the government's access to a customer's own records, it follows that reimbursement is permitted only when the financial institution provides the financial records of a bona fide "customer," not those of another entity.

Logic also supports the government's position that a financial institution may only be reimbursed for the costs it incurs in providing a customer's own financial records. Under PNB's interpretation of the "pertaining to" language, PNB would be entitled to reimbursement for producing the corporate records of American Investors merely because the three individuals under grand jury investigation happen to be customers of the same bank. Were it not for this coincidence, PNB would not have been entitled to reimbursement for, as we have already determined, American Investors was not itself a "customer" of PNB. Thus, whether the bank would be entitled to reimbursement for the costs of producing a particular set of records would depend not upon the type of records involved or the identity of the account holder, but rather upon whether the grand jury investigation was in any way directed at a customer of the bank. We cannot believe that Congress intended to condition the right of reimbursement on such a haphazard basis.

Finally, in the absence of a clear expression of legislative intent, we decline to ascribe to Congress an interpretation of the "pertaining to" language which, in our view, could seriously undermine the traditional secrecy of grand jury proceedings. In order to defend its denial of a request for reimbursement on the ground that the requested documents do not pertain to the investigation of a customer, the government would be required to disclose the target of a grand jury investigation. Under Fed.R.Crim.P. 6(e), such disclosures are prohibited absent a court order. Accordingly, we hold that a financial institution is entitled to reimbursement under section 3415 only for those costs associated with the production of a customer's own financial records. The costs of producing the financial records of a corporation are therefore not subject to reimbursement because such an entity is not a "customer" under the Act.

### III.

The order of the district court will be reversed, and the case will be remanded for further proceedings consistent with this opinion.