**In re David PORRAS a/k/a I. David Porras, Debtor.**

· **Bankruptcy No. 95–30583.**

United States Bankruptcy Court,
W.D.Texas,
El Paso Division.

Dec. 7, 1995.

Bernard Given, II, Mounce & Galatzan, El Paso, Texas, for Lucille Christie Blakley Trust.

Louise P. Hytken, Gregg D. Stevens, Dallas, Texas, for U.S.

### DECISION AND ORDER ON DEBTOR'S MOTIONS TO QUASH SUBPOENA

LEIF M. CLARK, Bankruptcy Judge.

Came on for consideration motions of the Lucille Blakely Trust (the "Trust") to quash certain subpoenas issued in favor of the Department of Justice, Tax Division, on behalf of its "client," the Internal Revenue Service. The subpoenas were issued to AA & T Escrow Company, First National Bank in Alamagordo, NationsBank, and Texas Commerce Bank (together the "Banks"), and requested, for all accounts maintained by the Trust, the production of all canceled checks greater than $200.00, bank statements, and records of deposit from January, 1988 to the present.[1] The Trust seeks to quash the subpoe-

---

1. The subpoenas were issued pursuant to Bankruptcy Rule 2004(c). That Rule makes reference to Bankruptcy Rule 9016, which in turn incorpo-

rates Rule 45 of the Federal Rules of Civil Procedure.

nas on grounds that the DOJ has failed to comply with the federal Right to Financial Privacy Act of 1978 (the "RFPA" or the "Act") (codified at 12 U.S.C. §§ 3401 et seq.) as well as with section 30.007 of the Texas Civil Practices and Remedies Code. For the reasons stated herein, the motions to quash should be denied.

## Discussion

### THE RIGHT TO FINANCIAL PRIVACY ACT ("RFPA")

■ The Trust first argues that the subpoenas should be quashed because DOJ has failed to comply with the requirements of RFPA. DOJ responds that its compliance with RFPA is irrelevant because the Trust is not a protected entity under the Act. Thus the Trust lacks standing to invoke the protections of RFPA in the first place.

12 U.S.C. § 3403 provides as follows:

(a) Release of records by financial institution prohibited

No financial institution, or officer, employees or agent of a financial institution, may provide to any government authority access to or copies of, or the information contained in the financial records of any *customer* except in accordance with the provisions of this chapter.

(b) Release of records upon certification of compliance with chapter

A financial institution shall not release the financial records of a *customer* until the Government authority seeking such records certifies in writing to the financial institution that it has complied with the applicable provisions of this chapter.

12 U.S.C. 3403 (emphasis added).

RFPA's limitations and protections extend by the Act's terms only to entities which are "customers" of a financial institution. "Customer" is a defined term under RFPA. Section 3401 defines a customer as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiducia-ry, in relation to an account maintained in the person's name." 12 U.S.C. § 3401(5). A "person" in turn "means an individual or a partnership of five or fewer individuals." 12 U.S.C. § 3401(4). Because the Trust is neither an individual nor a partnership, the Trust cannot qualify as a "customer" under RFPA. And if it is not a customer, then it is not protected by RFPA either.

The Trust counters that this reading of "customer" is simply too narrow, and that the word ought to be given its ordinary, common-sense meaning in furtherance of the Act's purposes. But those courts which have been called upon to construe this term "have adhered strictly to the explicit, unambiguous definition of customer found in the Act. . . ." *Ridgeley v. Merchants State Bank,* 699 F.Supp. 100, 102 (N.D.Tex.1988); *see also, United States v. First National Bank,* 866 F.Supp. 884, 886 (D.Md.1994) ("Under RFPA, however, notification is only required to individuals and partnership entities of less than five individuals. Because [the Plaintiff] seeks bank records from corporate account holders, it need not serve notice on these customers to enforce the [plaintiff's] subpoena under the federal statute."); *Inspector General v. Great Lakes Bancorp,* 825 F.Supp. 790, 794 (E.D.Mich.1993) (the RFPA applies only to "persons" as defined in the Act); *Jobin v. Resolution Trust Corporation,* 156 B.R. 834, 837 (D.Colo.1993) ("The term 'person' is limited to individuals or a partnership of five or fewer individuals."). The term "person" is unambiguously delimited in RFPA, and does not include trusts. Because the Trust is not a "person" and because only "persons" are "customers" within the meaning of RFPA, the Trust cannot be a "customer" protected by the RFPA.

Because the Trust is not a customer, the Trust lacks the standing to invoke any of the protections of RFPA, and DOJ is not obligated to comply with RFPA with respect to its efforts to discover the Trust's financial records at the financial institutions here in question. With the RFPA unavailable as a "block" to the subpoena, the Trust falls back on the Texas statute for protection, and it is to that issue that we next turn.

TEXAS CIVIL PRACTICE & REMEDIES
CODE, § 30.007

■ The Trust argues that, if the RFPA does not protect the Trust, the subpoenas should still be quashed for failure to comply with the requirements of section 30.007 of the Texas Civil Practices and Remedies Code. The financial institutions the actual target of the subpoenas echo this position, maintaining that they are under no obligation to cooperate with a federal agency inquiry unless and until the federal agency has complied with this Texas statute.

Section 30.007 provides,

(b) This section provides the exclusive method for compelled discovery of a record of a financial institution relating to one or more customers, does not create a right of privacy in a record, and does not apply to: [2]

(2) a record request from a state or federal government agency or instrumentality under statutory or administrative authority that provides for, or is accompanied by, a specific mechanism for discovery and protection of a customer record of a financial institution, including a record request from a federal agency subject to the Right to Financial Privacy Act of 1978 (12 U.S.C. Section 3401 et seq.) or from the Internal Revenue Service under 26 U.S.C. Section 7609.

TEX.CIV.PRAC. & REM.CODE § 30.007.

The Trust concedes that, whenever RFPA applies and prescribes different requirements for obtaining financial records from those set out in § 30.007, the state statute must yield to the federal statute under general principles of federal preemption. Motions, at ¶ 9.[3] However, the Trust contends that, when RFPA does *not* apply, *i.e.,* when the financial records in question are not those of a "customer" otherwise protected by

the federal act, then the state statute fills the void. The contention is that the two enactments are not in conflict, but in fact are complementary, with the RFPA furnishing the rule of decision for entities falling within that law's definition of "customer," and with the protective scheme for "non-customers" left to the various states.

The Trust (as well as one of the financial institutions the target of subpoena in this case) argues that Congress had no intention of precluding states from providing protections to such "non-customers." Thus, concludes the Trust, Texas law has filled the void left by federal law, affording protections to which it is here entitled. Because the United States has not complied with those state law protections, says the Trust, the subpoenas should be quashed. Whether the Trust's contention is correct turns on a closer analysis of federal preemption.

A. *The Doctrine of Preemption in General*

■ Article VI, clause 2 of the U.S. Constitution, commonly known as "the Supremacy Clause," states in relevant part that "[t]his Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land, any thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const.Art. VI, cl.2. Section 30.007, like any other state law, will be preempted if it is contrary to a valid federal law. Determining whether a state law is "contrary" is not always easy, however. *In re Volpe,* 100 B.R. 840, 846 (Bankr.W.D.Tex.1989).

If RFPA applied to trusts, and prescribed requirements at odds with the state statute, then simple common sense tells us that the state statute is preempted. *Volpe, supra.*

**2.** Section 30.007 defines "Customer" as "a person who uses, purchases, or obtains an account, extension of credit, or product of a financial institution or for whom a financial institution acts as a fiduciary, agent, or custodian or in another representative capacity." The term "person" is not defined in section 30 of the Texas Civil Practice and Remedies Code, and because it is not dispositive to the court's ultimate holding the court does not express an opinion on whether the Trust would be a "customer" under § 30.007. However, it is noted that the Texas

Banking Act states that " 'person' means an individual or *any legal entity.*" Ch. 914 § 1 Sec. 1.002(44) 74th Leg. 4456 (1995).

**3.** Even without the express conciliation to the RFPA, if the RFPA applied and there was conflict between the state and federal statute, § 30.007 would have to yield under the Supremacy Clause. *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 143–143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

But we know from our earlier discussion that RFPA does *not* apply to trusts. The state statute does not seem to directly contradict the federal enactment.

## B. *Occupying the field*

■ Yet that is not the end of preemption analysis. It is only the beginning. A statute which is not facially in conflict with a federal enactment might nonetheless be preempted if it conflicts with the intentions and purposes of Congress, as expressed in the federal enactment. For example, if Congress intended to "occupy the field" which is the subject matter of the federal statute, then *any* state enactment in that field will be preempted, even if that state enactment is not expressly in conflict. "[S]tate law which does not conflict with a positive Congressional enactment in the common sense ... may nevertheless conflict with Congressional silence on a subject which is within a field as to which Congress has reserved to itself the sole right to regulate; while these preempted state laws may seem to further the federal scheme in question, they conflict with Congress' implicit or explicit declaration that any regulation within a certain field is to be done by Congress itself." *Volpe*, 100 B.R. at 848; *see also Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) ("the question whether a certain state action is preempted by federal law is one of Congressional intent. The purpose of Congress is the ultimate touchstone").

The further question we must therefore pursue here is whether, in enacting RFPA, Congress intended to "occupy the field." This requires a two-part analysis. Firstly, precisely what is the field, and secondly, did Congress intend to occupy it (to the exclusion of competing state laws). If the answer to the second question is yes, then Texas' statute will escape preemption only if it falls outside the field intended to be occupied.

The Trust argues that section 30.007 expressly states that it was enacted in order to provide "the exclusive method for compelled discovery of a record of a financial institution" but that it further "does not create a right of privacy in a record." Tex.Civ.Prac. & Rem.Code § 30.007(b). The Trust urges that, since section 30.007 expressly disclaims

creating a right of privacy, it thereby expressly "yields the field" to the federal statute. Whether the Trust is correct turns on whether the statute has correctly identified the field intended to be occupied by RFPA (assuming an intent to occupy at all).

The Trust assumes that the "field" occupied by RFPA is "privacy expectations in certain records." Accepting for the moment that the Trust has it right (and we shall see a little later that it does not), the notice requirements placed on the seeker of financial records by the Texas statute in fact *do* accord a measure of privacy protection over financial records and so impinge on territory apparently already occupied by the federal statute. All agencies or persons seeking discovery of financial records (including federal agencies) are required by the state enactment to afford certain preliminary notices to the "customer" of the financial institution, as defined by the state enactment, affording that customer at least an opportunity to challenge the discovery beforehand. That is the functional equivalent of a "privacy expectation" attaching to the relevant record. If the field, then, is "privacy expectations in financial records," then the state statute purports to do what it cannot do—accord a privacy expectation (and a concomitant limitation on federal agency inquiries) to records of entities expressly *not* deemed to have a privacy expectation under the federal statute. The state statute, to the extent it grants privacy expectations inconsistent with those outlined in the federal enactment, purporting to be enforceable against federal agency inquiries, is preempted. That field is already occupied by the RFPA.

The Trust urges that section 30.007 does not really conflict with Congress' intentions under the RFPA because Congress intended to extend privacy expectations only to a certain class of entities (defined as "customers" under the RFPA), leaving it to the states to enact appropriate laws regarding the privacy expectations of other entities. In other words, the argument is that Congress did not really intend to occupy this field. The Trust's position misapprehends the intentions of Congress.

■ The function of RFPA is not so much to provide special protections for a certain

favored class of entities, as the Trust contends, but rather to balance the competing interests of customers of financial institutions and federal agencies seeking to discover the records of those customers. On one side stand the interests of federal agencies in having the requisite authority to perform their federally mandated duties, free of state intrusion or restrictions. *See M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). On the other side stand the privacy interests of certain entities, interests deemed sufficiently important by Congress to warrant placing limitations on federal inquiries.

The legislative history to the RFPA explains how this balancing of interests led to its enactment:

Title XI is intended to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity. Therefore, the title seeks to strike a balance between customers' right of privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations. The title is a Congressional response to the Supreme Court decision in *United States v. Miller* which held that a customer of a financial institution has no standing under the Constitution to contest government access to financial records. The Court did not acknowledge the sensitive nature of these records, and instead decided that since the records are the 'property' of the financial institution, the customer has no Constitutionally recognizable privacy interest in them. Nevertheless, while the Supreme Court found no Constitutional right of privacy in financial records, it is clear that Congress may provide protection of individual rights beyond that afforded in the Constitution.

H.R.REP. 95–1383, 95th Cong., 2d Sess. 33, *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS 9273, 9305. After the *Miller* decision (referenced in the legislative history), Congress elected to provide just such a "protection of individual rights beyond those afforded in the

Constitution" to at least a certain class of persons, while at the same time preserving relatively unrestricted access for governmental agencies to the financial records of other entities. The task was simply to decide which entities ought to have special protection, and which should not, given that any special protections would, of necessity, place impediments on the ability of federal agencies to do their job. To that end, the legislative history explains,

Title XI represents a substantial compromise between the original version of the title and the views of various law enforcement agencies. In the past, these agencies opposed any privacy legislation on the ground that such protections would unduly hamper law enforcement. However, these agencies now believe that privacy protection and effective law enforcement are compatible. Therefore, the agencies participated in extensive discussions with committee members to work out a bill which would be acceptable to all concerned. At the full committee markup of title XI, Mr. Cavanaugh and Mr. Lafalce presented a substitute title which reflected these discussions. The committee considered several amendments to the substitute, and adopted it, as amended, by a vote of 39 to 3.

H.R.REP. NO. 1383, U.S.CODE CONG. & AD-MIN.NEWS 1978 p. 9306, *supra.* Individuals and small collections of individuals (such as small partnerships), were thus deemed by Congress to have sufficiently high privacy expectations to warrant special protection.[4] Meanwhile, though other entities, such as corporations or trusts, might well have *some* expectation of privacy, they were not deemed sufficiently great to warrant impinging on the competing interests of federal agencies charged with pursuing inquiries in furtherance of their mandates to enforce congressional enactments.

The balance struck between these competing interests (privacy expectation versus law enforcement inquiry) is reflected in RFPA's definition of "customer," which extends special protections only to those entities falling within that definition, while placing no spe-

---

4. "Both the bill and the report were based on two key principles; one that the *customer* be given prior notice of the government's attempt to gain access to his bank records, and two, that the *customer* be given an opportunity to contest government access in court." H.R.REP. NO. 1383.

cial restrictions on law enforcement inquiries (relating to access to financial records) when the entity whose financial records are being sought does *not* fall within that definition. The definition of who is and who is not protected is the mechanism by which RFPA accomplishes this balancing of competing interests. Thus, any law which would place additional obstacles in the way of federal agency inquiry of financial records, either by augmenting the obligations already imposed by RFPA, or by expanding the universe of entities entitled to some protection, of necessity upsets the careful balance crafted by Congress. That Congress sought to engage in such a careful balancing confirms that it sought to occupy this field, to the exclusion of other laws that might upset that balance.

 The state statute here in question does just that—it upsets the balance intended to be struck "between customers' right of privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations." *See* H.R.REP. No. 1383, U.S.CODE CONG. & ADMIN.NEWS 1982 p. 9305, *supra.* The field occupied by RFPA may properly be described as "the universe of entities entitled to special protections with regard to discovery by a federal agency of the entity's financial records from a financial institution." We recall from our discussion *supra* of the statute's legislative history that federal agencies opposed *any* restrictions upon their ability to obtain such records, and the Supreme Court had held that customers (in the generic sense) of a financial institution have no Constitutionally protectible privacy interest in such records. Congress, when it enacted this statute, certainly could have chosen to impose restrictions on federal agency inquiry based upon the nature of the records being sought (*i.e.,* a privacy expectation attaching to the records). But that choice would not have effected the careful balancing ultimately achieved by RFPA. Instead, Congress elected to define a universe of *entities* that might be entitled to special protection, then prescribed what

those protections ought to be. That is how Congress responded to the *Miller* holding, while still honoring the legitimate concern of federal agencies that they not be faced with excessive obstacles to their pursuit of their enforcement inquiries. A state statute that purports to impose *additional* obstacles to such inquiries, or which purports to expand the universe of entities entitled to special protection infringes on a field already occupied by the federal enactment.[5]

A Connecticut district court faced with a similar issue concluded that a Connecticut statute that required service upon a customer whose records were sought could not be applied to a federal grand jury's subpoenas. *In re Grand Jury Subpoena,* 481 F.Supp. 833, 834 (D.Conn.1979). Specifically, the court noted,

> This congressional intent not to impede legitimate investigations would be frustrated by the application of the state notice and challenge provisions which serve as an obstacle to the accomplishment of the congressional objective. To find otherwise gives rise to the potential that, in each of the fifty states, despite the existence of a valid congressional enactment setting forth the power of the federal grand jury to obtain documents relative to its investigation, the congressional intent could be subverted by the enactment of peculiarly local requirements.

*Id.* at 834–35. Here too, if section 30.007 were permitted to apply to subpoenas sought by a federal agency in pursuit of its enforcement inquiries, it would similarly frustrate the congressional intent that such discovery not be impeded except under circumstances specifically delimited by Congress · itself in the RFPA. Whether the state statute purports to impose additional requirements beyond those imposed by the RFPA, or purports to simply expand the universe of entities entitled to any protection at all from such discovery, the statute makes law in an area already occupied by federal law. It is thus preempted.

**5.** Ironically, section 30.007 is a higher hurdle than is the RFPA. An entity entitled to no protections under the federal statute would enjoy greater protections from inquiries by virtue of the state law. Under the reading urged by the Trust, a federal agency would have to comply with the less restrictive RFPA when privacy expectations are at their apex (*e.g.* an individual), yet when the expectation of privacy is so low that it is not deemed to merit protection under the RFPA, the agency would have to comply with the greater restrictions of the state statute.

## C. Legitimate law enforcement inquiry

■ The Trust's final argument is that Congress only intended to balance the financial record needs of a federal agency when it is engaged in a "legitimate law enforcement inquiry," drawing on the language of RFPA. This court agrees. RFPA was designed to balance the inquiry needs of federal agencies against privacy expectations. Just as the privacy expectation side of the scale is at its heaviest when the records relate to an individual or small partnership, Congress places the most weight on the discovery needs of a federal agency when the records are sought pursuant to a legitimate law enforcement inquiry.

In RFPA, Congress provided that " 'law enforcement inquiry' means a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." 12 U.S.C. § 3401(8). DOJ, on behalf of its client, the Internal Revenue Service, seeks records in pursuit of the enforcement of provisions of the Internal Revenue Code, as well as information about assets which might belong to the Debtor in this bankruptcy case. Specifically,

> [t]he DOJ is seeking the records relating to the Trust because it contends that the debtor "has been using the Trust as a shield to avoid the payment of his creditors including his federal income taxes. [The Debtor] has failed to pay his 1984–1987 income taxes. Accordingly he is indebted to the Internal Revenue Service in an amount in excess of $36,000,000. [The Debtor] has also failed to file any income tax returns or pay any income tax since 1987.... [The Debtor] does not even keep a bank account in his own name and the Trust pays *all* of his personal expenses.... The United States needs this information in order to determine [the Debtor's] tax liability for 1988 through the present and to determine the extent of [the Debtor's] assets."

United States' response to the Motions at p. 2–3. (emphasis in original). DOJ is at the very least "inquiring into a violation of, or failure to comply with" a "civil statute," "regulation," or "rule." 12 U.S.C. § 3401(8). Such an inquiry easily qualifies as a legitimate law enforcement inquiry, even though that inquiry is being conducted in the context of bankruptcy.

Were the Internal Revenue Service pursuing precisely the same inquiry outside of bankruptcy, it would no doubt employ section 7602 of the Internal Revenue Code, which provides:

> (a) Authority to summon, etc.—For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—(1) To examine *any* books, papers, records, or other data which may be relevant or material to such inquiry."

26 U.S.C. § 7602 (emphasis added). The importance Congress attaches to these particular kinds of inquiries is demonstrated by the fact that Congress specifically *exempts* section 7602 requests from the requirements of the RFPA.[6] Thus, in the balancing process, Congress has elevated such inquiries into what we might call the "highly legitimate" category of legitimate law enforcement inquiries. Clearly, were the IRS pursuing this inquiry outside of bankruptcy, the pursuit would be both legitimate and irresistible.

That the Internal Revenue Service now finds itself having to continue its pursuit of its enforcement inquiries within the confines of the Bankruptcy Code alters the mechanisms available to the IRS, but it does not alter the legitimacy of the underlying pursuit. Constrained by the automatic stay, the IRS cannot so easily employ section 7602 of Title 26. *See* 11 U.S.C. § 362(a). Instead, it must now employ the methods available to it as a creditor in the bankruptcy process. One of those mechanisms is Rule 2004. *See* Fed. R.Bankr.P. 2004(a). But the inquiry—and

---

6. "Nothing in this chapter prohibits the disclosure of financial records in accordance with pro- cedures authorized by Title 26." 12 U.S.C. 3413(d).

its legitimacy—is in no way diminished by the change in mechanisms. The inquiry into liability for taxes, correctness of returns, and so forth is simply in pursuit of its enforcement of the tax laws of the United States, albeit within the constraints imposed by the Bankruptcy Code. The inquiry is a "legitimate law enforcement inquiry" within the meaning of 12 U.S.C. § 3401(8).[7]

### Conclusion

The Trust's motions to quash were based on DOJ's alleged failure to comply with RFPA or § 30.007 of the Texas Civil Practices and Remedies Code. Congress intended RFPA to occupy the field and be the sole regulator of a federal agency's ability to discover financial records in the pursuit of legitimate law enforcement inquiries. DOJ (and the IRS) are federal agencies, seeking records pursuant to a legitimate law enforcement inquiry, and as such, can only be restricted in their pursuit by RFPA. Section 30.007 is preempted and so does not apply to DOJ's request (or, for that matter, to the inquiry of *any* federal agency of *any* financial institution in Texas). Because DOJ seeks financial records regarding an entity to which Congress did not grant privacy protections under RFPA, DOJ was not obligated to comply with RFPA's discovery requirements.

The motions to quash the subpoenas issued to AA & T Escrow Company, First National Bank in Alamagordo, NationsBank, and Texas Commerce Bank are hereby **DENIED.**

So **ORDERED.**

---

7. We do not here address DOJ's further contention that the Trust lacks standing even to complain whether the law enforcement inquiry is or is not "legitimate" because the Trust is not a "customer" under the RFPA.