**EXCHANGE POINT LLC, Movant,**

v.

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. M–30.**

United States District Court, S.D. New York.

June 10, 1999.

## OPINION AND ORDER

SCHWARTZ, District Judge.

Exchange Point LLC ("Exchange Point" or "Movant") moves the Court to quash or modify a subpoena issued by the Securities and Exchange Commission ("SEC") on First Union National Bank ("First Union") with respect to Exchange Point's bank account at First Union. For the reasons that follow, the motion is DENIED.

### FACTUAL BACKGROUND

■ Exchange Point is a single member limited liability company organized under Delaware law. (Declaration of Alon Moussaief at ¶ 1.) Alon Moussaief is the sole owner and president of Exchange Point. (*Id.*) Exchange Point primarily operates as a conduit firm in the business of check cashing for Israeli clients. (*Id.* at ¶ 2.) For example, a person in Israel will cash a check at one of Exchange Point's Israeli affiliate's offices, and the Israeli affiliate will forward the check to Exchange Point's U.S. office. (*Id.* at ¶ 2.) The check will then be cleared by means of Exchange Point's bank account at First Union. (*Id.*) Exchange Point also has engaged in wire transfers for customers between the U.S. and Israel. (*Id.*)

The SEC is investigating possible violations of securities laws in connection with various securities. (Verified Opposition of Respondent United States Securities and Exchange Commission to Motion for Order Pursuant to Customer Challenge Provisions of the RFPA ("Ver.Opp.") at 2.) The SEC's investigation involves allegations that certain entities may have manipulated the prices of certain securities in a scheme to defraud investors. (*Id.* at 2–3.) The SEC has information that certain funds may have been wired through Exchange Point's account at First Union in connection with these stock price manipulations. (*Id.* at 3–4.) In furtherance of its investigation, the SEC has issued a subpoena *duces tecum* (the "Subpoena") on First Union seeking records relating to Exchange Point's account for the period during which the manipulative practices allegedly occurred. (*Id.* at 4.) Exchange Point filed this motion to quash or modify that Subpoena.

### DISCUSSION

#### 1. Standing of a Limited Liability Company under the RFPA

A "customer" of a financial institution may object to a government subpoena of

bank records to that institution under the Right to Financial Privacy Act of 1978 ("RFPA"). *See* 12 U.S.C. § 3410. A "customer" is defined under the RFPA as "any *person* or authorized representative of that person who utilized or is utilizing any service of a financial institution." 12 U.S.C. § 3401(5) (emphasis added). A "person" is defined in the RFPA as "an individual or a partnership of five or fewer individuals." 12 U.S.C. § 3401(4). The question arises, therefore, whether Movant is a "person" under the RFPA with standing to object to the Subpoena. The Court concludes that Movant, as a limited liability company, is not a person as defined by the RFPA and does not have standing to object to the Subpoena.

### a. The Limited Liability Company under Delaware Law

Exchange Point is a limited liability company ("LLC") organized under Delaware law. An LLC under Delaware law is similar to a limited partnership:

The Delaware Limited Liability Company Act (Act) ... is modeled on Delaware's well accepted limited partnership statute. Rather than having general partners and limited partners as a limited partnership does, however, the owners of a Delaware LLC are designated as members. The management of an LLC may be vested in its members or in a manager or managers selected by the members or in a combination of members and managers. A manager of an LLC need not be a member. A member is treated under the Act in many ways similar to the way a limited partner is treated under the limited partnership statute. A manager of an LLC, to the extent one is selected, is treated similarly under the Act as a general partner is treated under the limited partnership statute, except that a manager does not have general liability.

*See* Martin I. Lubaroff & Paul M. Altman, Delaware Limited Liability Companies, 6

No. 11 INSIGHTS 32, 32 (1992) (emphasis added).

Federal courts have recognized that a major difference in practice between a limited partnership and an LLC is the more extensive limitations in liability accorded to members of the latter. The LLC "need have no equivalent to a general partner, that is, an owner who has unlimited personal liability for the debts of the firm." *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir.1998) (applying Wisconsin LLC law). Additionally, a member of an LLC is not subject to the same risks that he or she may become liable for the company's debts:

A significant advantage of an LLC as an alternative form of business entity is that the members and managers have limited liability to third parties. The Act provides that the debts, obligations and liabilities of a Delaware LLC, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Delaware LLC as an entity. Further, the Act provides that no member or manager shall be obligated personally for any debt, obligation or liability of a Delaware LLC solely [by reason of] being a member or acting as a manager. *In contrast to a limited partner in a limited partnership, the limitation on the liability of a member is not jeopardized, in fact or in theory, when the member participates in the management or control of the business of a Delaware LLC.*

*See* Lubaroff & Altman, *supra*, at 34 (emphasis added).

### b. A Delaware LLC Does Not Have Standing under the RFPA.

█ Both parties agree that whether Exchange Point has standing under the RFPA is an issue of first impression. As stated earlier, a "person" who may qualify as a customer under the RFPA is defined as "an individual or a partnership of five or fewer individuals." 12 U.S.C. § 3401(4). Because a sole proprietorship is basically a

"partnership of one," courts have considered it a person under the RFPA and a sole proprietorship therefore has been found to have standing to challenge a government subpoena of financial records. *See Hunt v. United States Securities and Exchange Comm'n,* 520 F.Supp. 580, 604 (N.D.Tex.1981); *United States v. Whitty,* 688 F.Supp. 48, 58 (D.Me.1988). Similarly, courts have found that a *limited* partnership, under the RFPA's plain meaning, is included under the term "partnership" and is entitled to standing if it has fewer than 5 partners. *See Inspector Gen. of United States Dept. of Agriculture v. Great Lakes Bancorp,* 825 F.Supp. 790, 793 (E.D.Mich. 1993) *("Great Lakes").* A corporation, however, is "unambiguously" not included in the definition of a person under the RFPA and is not entitled to challenge a subpoena or seek reimbursement under the statute. *See Pittsburgh National Bank v. United States,* 771 F.2d 73, 75–6 (3d Cir.1985) (internal citations omitted); *United States v. Daccarett,* 6 F.3d 37, 51 (2d Cir.1993). Nor are the protections of the RFPA available to a partnership with one or more corporate partners, *see Great Lakes,* 825 F.Supp. at 794; a trust, *see In Re Porras,* 191 B.R. 357, 359 (Bankr. W.D.Tex.1995); or an employee benefit plan, *see Donovan v. National Bank of Alaska,* 696 F.2d 678, 683 (9th Cir.1983).

"[The] courts which have been called upon to construe this term 'have adhered strictly to the explicit, unambiguous definition of customer found in the Act....' " *Porras,* 191 B.R. at 359 (citing *Ridgeley v. Merchants State Bank,* 699 F.Supp. 100, 102 (N.D.Tex.1988)). Because the RFPA's definition of person is not ambiguous, the Court must apply its plain, ordinary meaning. *See Great Lakes,* 825 F.Supp. at 793. "A definition which declares what a term means excludes any meaning that is not stated." *Pittsburgh National Bank,* 771 F.2d at 75 (internal citations and quota-

tions omitted). In *Great Lakes,* the court found that the plain meaning of "partnership" included a "limited partnership." Here, a limited liability company is plainly *not covered* by the plain meaning of the words "individual or a partnership of less than five individuals."

In addition to the omission of any term that could encompass an LLC in the statutory definition of person in the RFPA, the Court notes a key difference between an LLC and all of the entities that have been held to be persons under the RFPA: an LLC need not have any member or manager that is liable for the debts of the company, even in the case of a wholly owned LLC with only one member-manager. In this respect, Exchange Point is much more similar to a wholly owned corporation with one shareholder than a partnership or sole proprietorship. As a Delaware state superior court stated in *Poore v. Fox Hollow Enterprises:*

> Although the statute treats an LLC as a partnership for federal income tax purposes, an LLC is largely a creature of contract ... An LLC ... constitutes a separate legal entity ... [and] the interest of a member in the LLC is analogous to shareholders of a corporation. A member usually contributes personal property and has no interest in specific assets owned by the LLC.... [A] member or manager of an LLC cannot be held liable for the company's debts or obligations above his or her contribution to the company.... The Court finds these aspects of the LLC constitute a distinct, but artificial entity under Delaware law.

No. C.A. 93A–09–005, 1994 WL 150872, *2 (Del.Sup.March 29, 1994) (holding that an LLC, unlike a partnership, must be represented by an attorney in court in the same manner as a corporation) (internal citations omitted).[1]

---

**1.** Movant notes that LLC's are considered more closely related to partnerships than corporations in two different areas of federal law. First, an LLC, like a partnership, is con-

sidered to be a citizen of every state that its members are citizens of for diversity purposes. *See Inarco International Bank N.V. v. Lazard Freres & Co.,* No. 97 Civ. 378(DAB),

"[T]he primary purpose of the [RFPA] is to protect the privacy rights of individuals and small partnerships." *Pittsburgh National Bank*, 771 F.2d at 75. "[B]ecause corporations do not enjoy a similar expectation of privacy, the [RFPA] was drafted to limit applicability of its procedural protections to individual customers." *Id.* at 75. The Court finds some substance in the argument that a single member LLC has many of the same attributes and privacy interests as a small partnership or sole proprietorship. However, the plain meaning of the statute simply cannot countenance the inclusion of a limited liability company in the term "individual or partnership of five or fewer individuals." Additionally, the same privacy interests might apply to a single shareholder corporation, and no case has held that *Pittsburgh National Bank* applies only to corporations of greater than five shareholders.

The Court could exercise more flexibility in interpreting the RFPA were it to find that an interpretation in conformance with the literal or usual meaning of the words in the statute would "thwart the obvious purpose of the statute." *Id.* at 75 (citing *C.I.R. v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965)). However, the Court concludes that excluding LLC's from the protections of the RFPA will not thwart Congressional intent. Congress could have provided standing for LLC's of less than five members, or for ordinary corporations of five or fewer shareholders, but it chose not to by creating a very limited definition of "person" under the RFPA. The RFPA's protections are fully available to individuals and individuals who form small partnerships. If they so desire, individuals may choose instead to form an LLC with no member or manager

fully liable for the company's debts. One price, however, of this greater separation between the business entity and its principals is that the entity will become less closely identified with the individuals who control it, and thus accorded a weaker privacy interest under the RFPA.

### 2. The Scope of the SEC's Subpoena is Not Unreasonable.

■ Even were the Court to find that Movant did have standing under the RFPA, the Court would still deny the motion to quash or modify the Subpoena. Although Movant asserts that the Subpoena covers many records that are not related to the SEC's investigation, the Court finds that the SEC has demonstrated "reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry." 12 U.S.C. 3410(c). The records sought by the SEC are relevant in that the requested information "touches a matter under investigation." *Sandsend Fin. Consultants, Ltd. v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir.1989). Similarly, the Court finds that the records subpoenaed by the SEC are not excessive, and are reasonably necessary in order to pursue its investigation. The $1,000 minimum threshold specified by the Subpoena will eliminate many of the transactions that may be unrelated to the investigation. *See In re Matter of U.S. S.E.C. Private Investigation/Application of Doe re Certain Subpoenas*, No. M8–85 (MBM), 1990 WL 119321, *2 (S.D.N.Y. Aug. 10, 1990) (denying a motion to quash a subpoena; finding, *inter alia*, that minimum dollar threshold of $500 will assure that "purely personal transactions in small amounts will not be disclosed"). At oral

1998 WL 427618 (S.D.N.Y. July 29, 1998). Second, Movant asserts that a single member LLC, along with other wholly-owned business entities that are not corporations, is treated as a mere extension of its owner for federal tax purposes. *See* 26 C.F.R. § 301.7701–2(c)(2) (1998). The Court finds these examples unsupportive of Movant's position in light of (i)

the plain meaning of the RFPA in excluding all entities except individuals and partnerships of five or fewer members, and (ii) the important differences between partnerships and LLC's with respect to the more extensive limitations on personal liability available to members of the latter.

argument and in its papers, Movant was unable to establish that the $1,000 threshold is insufficient to protect its privacy interests.

This conclusion is strengthened by the fact that Movant has failed to suggest a suitable alternative to the Subpoena that would be less intrusive but still satisfy the SEC's legitimate law enforcement requirements. At this early stage of the investigation, it is unrealistic to expect the SEC to name all of the particular parties in whose accounts it is interested because this would require precisely the sort of information that the SEC hopes to glean from its Subpoena. The SEC asserts that the manipulative practices were likely carried out in the names of fictitious shell corporations and that the true identities of the persons who profited from this scheme have remained hidden from them. (Ver. Opp. at 3.) Further, identifying to Exchange Point by names or other indicia the entities or transactions specifically targeted by the investigation could result in advanced warning to potential targets and jeopardize the efficacy of the SEC's investigation. *Cf. S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 750, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984) (discussing the danger that too much information provided to a target could "enable an unscrupulous target to destroy or alter documents, intimidate witnesses, or transfer securities or funds so that they could not be reached by the government.")

### 3. The Court Will Not Stay the Subpoena Pending Appeal

At the conclusion of oral argument, Movant requested that, in the event that the Court ruled against his client, the Court consider staying the SEC's Subpoena pending appeal. No stay is appropriate here because Movant has not shown a likelihood of success on the merits. *See In re Pan Am Corp.*, No. M–47, 1993 WL 288282, *1 (S.D.N.Y. July 29, 1993) (Wood, J.) (denying motion for a stay because movant's appeal was not likely to succeed

on merits because the order was not appealable).

The RFPA explicitly states that a court decision denying a motion to quash a subpoena under the statute "shall not be deemed a final order and no interlocutory appeal may be taken therefrom by the customer." 12 U.S.C. 3410(d). *See Daly v. United States of America*, 51 F.3d 285, 285 (10th Cir.1995). "Instead, the customer only may appeal as part of the final order in any subsequent legal proceeding brought by the government authority based on the subpoenaed records, or within thirty days of notification by the government authority that it does not intend to take further legal action." *Id.* (citing 12 U.S.C. 3410(d)). *See also Jerry T. O'Brien. Inc.*, 467 U.S. at 745, 104 S.Ct. 2720 (stating that a customer moving to quash a subpoena "cannot appeal an adverse determination until the Government has completed its investigation").

In sum, because Movant lacks standing to challenge the SEC's Subpoena, and because the Subpoena is reasonable in scope, the motion to quash or modify the subpoena must be denied. The petition to stay the Subpoena pending appeal must also be denied.

### CONCLUSION

For the reasons stated, the motion to quash or modify the Subpoena is DENIED. The petition to stay the Subpoena pending appeal is also DENIED.

SO ORDERED.