OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS


February 17, 2000

Mr. Harold E. Feeney
Credit Union Commissioner
Credit Union Department
914 East Anderson Lane
Austin, Texas 78752-1699

Opinion No. JC-0181

Re:   Whether credit unions may recover from investigating authorities the cost of producing records in response to grand jury subpoenas, and related questions   (RQ-0109-JC)

Dear Commissioner Feeney:

You ask whether credit unions may recover from the investigating authority the costs of retrieving and producing documents in response to a grand jury subpoena. We conclude that they may not.

You state that credit unions in Texas are at times served with grand jury subpoenas seeking the production of credit union records in connection with criminal investigations. *See* Letter from Harold E. Feeney, Credit Union Commissioner, Credit Union Department, to Honorable John Cornyn, Attorney General 1 (Sept. 9, 1999). The subpoena typically requests a substantial quantity of documents related to a member's account, such as membership agreements, signature cards, account statements, canceled checks, and the like. *Id.* While some records are easy to retrieve and copy, others require a considerable amount of time and expense to produce. *Id.* You state that credit unions generally do not retain copies of canceled checks, but use a third-party check processor, who usually charges the credit union a fee for the reproduction of each check. *Id.*

A grand jury may issue a subpoena summoning a witness to appear before it. TEX. CODE CRIM. PROC. ANN. art. 24.01(a) (Vernon 1989). If the witness has "in his possession any instrument of writing or other thing desired as evidence," the subpoena may specify the evidence and direct the witness to produce it in court. *Id.* art. 24.02. Witnesses who reside outside of the state or of the county of the grand jury are entitled to reimbursement for reasonable transportation, meal, and lodging expenses under article 35.27 of the Code of Criminal Procedure, but there is no provision in the code for reimbursing witnesses for the costs of producing evidence. Supplying information in connection with a criminal investigation is normally considered a public duty, no matter how financially burdensome it may be. *See Hurtado v. United States*, 410 U.S. 578, 589 (1973); *see also* TEX. CODE CRIM. PROC. ANN. art. 20.15 (Vernon 1977) (prescribing fine for refusal to testify to grand jury); *id.* art. 24.05 (prescribing fine for refusing to obey subpoena). Thus, the cost of complying with a grand jury subpoena has traditionally been placed upon the subpoenaed party. *Pittsburgh Nat'l Bank v. United States*, 771 F.2d 73, 76 (3rd Cir. 1985).

A federal grand jury is required by the federal Right to Financial Privacy Act to reimburse a financial institution for the costs of producing records pertaining to a customer in response to a grand jury subpoena. 12 U.S.C. §§ 3413(i), 3415 (1989). A "customer" within the reimbursement provision is "an individual or a partnership of five or fewer individuals." *Id.* § 3401(4)(5). Thus, the federal Act does not authorize reimbursement of a financial institution for the costs of producing financial records pertaining to a corporation in compliance with a grand jury subpoena. *Pittsburgh Nat'l Bank*, 771 F.2d at 76; *see also In re Grand Jury Proceeding*, 636 F.2d 81, 84-85 (5th Cir. 1981) (per curiam) (bank which was itself a target of grand jury investigation not entitled to reimbursement for costs of complying with grand jury subpoena). State governmental entities are not subject to this Act. 12 U.S.C. § 3401(3) (1989).

Section 59.006 of the Finance Code sets out a procedure for the compelled discovery of customer records of a financial institution in civil cases. TEX. FIN. CODE ANN. § 59.006 (Vernon Supp. 2000). Among other requirements, the requesting party must pay the financial institution's reasonable costs of complying with the discovery request, including the costs of reproduction, postage, research, and delivery of the records. *Id.* § 59.006(b)(2). There are several specific exceptions to section 59.006 of the Finance Code. Among other express exceptions, this provision does not apply to a demand from a state or federal government agency authorized to conduct an examination of the financial institution, an investigative demand by a legislative investigating committee, or "a record request from or report to a government agency arising out of the investigation or prosecution of a criminal offense." *Id.* § 59.006(a)(1), (3), (5). Thus, section 59.006 does not require an investigating authority to reimburse a credit union for its costs in complying with a grand jury subpoena.

You suggest that sections 125.402 and 125.403 of the Finance Code would require the state to reimburse credit unions for the costs of producing records in response to a grand jury subpoena. Section 125.402 provides as follows:

> (a) A credit union is not required to disclose or produce to a third party or permit a third party to examine a record pertaining to the affairs of a credit union member *unless*:
>
> (1) the request is made in connection with an examination or audit by a government agency authorized by law to examine credit unions;
>
> (2) the member consents to the disclosure or production of the record; or
>
> (3) the request is made by the [Credit Union Department] or is made in response to:
>
> (A) a subpoena or other court order; or

> (B) an administrative subpoena or summons issued by a
> state or federal agency as authorized by law.

TEX. FIN. CODE ANN. § 125.402 (Vernon 1998) (emphasis added).

Section 125.403 of the Finance Code provides that a credit union "is entitled to recover from a third party the reasonable cost actually incurred in disclosing or producing a record under this subtitle or other applicable law unless the cost was incurred in connection with an examination or audit by a government agency authorized by law to examine credit unions." *Id.* § 125.403. These two provisions together state that a credit union must produce records pertaining to a credit union member to a "third party" in response to a subpoena or court order, and that the credit union is entitled to recover from the third party the costs of disclosing a record.

Section 125.403 of the Finance Code does not expressly refer to subpoenas in criminal actions. Accordingly, we must determine whether "third party" as used in sections 125.402 and 125.403 includes a grand jury that is investigating a possible criminal offense. Section 125.403 expressly states that a governmental examining agency is not a "third party" for purposes of reimbursing the credit union for the costs of producing records, thus suggesting that "third party" would ordinarily include governmental entities such as a grand jury. *See Ex parte Kennedy*, 33 S.W.2d 443 (Tex. Crim App. 1930). However, the legislative history of sections 125.402 and 125.403 indicates that the legislature may have intended only to make it clear that a governmental examining agency was entitled to see credit union records and not to include all governmental entities in the term "third party."

When sections 125.402 and 125.403 were adopted in 1989, Act of May 17, 1989, 71st Leg., R.S., ch. 1098, § 10, 1989 Tex. Gen. Laws 4512, 4515-16, the Texas Credit Union Act was codified as article 2461-1.01-12.02 of the Texas Revised Civil Statutes. *See* Act of May 31, 1975, 64th Leg., R.S., ch. 707, 1975 Tex. Gen. Laws 2219, *repealed by* Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6, 1997 Tex. Gen. Laws 3091, 3602.[1] Sections 125.402 and 125.403 of the Finance Code were adopted as subsections (b) and (c) of article 2461-6.08, which became article 2461-6.08(a). Act of May 17, 1989, 71st Leg., R.S., ch. 1098, § 10, 1989 Tex. Gen. Laws 4512, 4515-16. Subsection 6.08(a) of article 2461 provided as follows:

> No credit union . . . is required to recognize the claim of any third party to any share or deposit account . . . unless and until the credit union is served with citation or other appropriate process issuing out of a court of competent jurisdiction in connection with a suit instituted by the third party for the purpose of recovering or establishing an interest in the deposit or share account.

---

[1]In 1997, the laws relating to credit unions were codified in the Finance Code, in a nonsubstantive revision of the statutes relating to financial institutions. Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Gen. Laws 3091, 3319-3360.

*Id.*; *see* TEX. FIN. CODE ANN. § 125.401 (Vernon 1998).

A "third party" was initially a person other than the credit union or account holder who claimed an interest in a credit union account. The 1989 amendment to former article 2461-6.08 protected a member's credit union records from examination by a third party and broadened the meaning of "third party" to include persons in addition to claimants who might want to examine credit union records. The bill adopting the 1989 amendments to the Texas Credit Union Act was "intended to provide statutory clarification of current interpretations of the Texas Credit Union Act." HOUSE COMM. ON FIN. INST., BILL ANALYSIS, Tex. S.B. 969, 71st Leg., R.S. (1989). Most of the changes were "considered to be of a housekeeping nature, rather than constituting substantive changes of purposes or structures." *Id.* The bill analysis attached to the companion bill states that the bill "[c]ould enact into law the current practices of the commission by giving the commissioner the clear authority needed to issue rules to regulate the industry." HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. C.S.H.B. 1652, 71st Leg., R.S. (1989). Neither bill analysis mentions grand jury subpoenas for credit union records relating to members accounts or to any other request for production of records issued by an entity authorized to investigate criminal activity.

There is a strong public policy in favor of supplying information in connection with a criminal investigation, even though this duty may be financially burdensome to the individual. *See Hurtado*, 410 U.S. at 589; *Pittsburgh Nat'l Bank*, 771 F.2d at 76; *see generally Andino v. State*, 645 S.W.2d 615 (Tex. App.–Austin 1983, no writ) (duty of witness to give testimony). Sections 125.402 and 125.403 of the Finance Code do not expressly state that credit unions are to be reimbursed for the costs of complying with grand jury subpoenas, nor does the history of this provision suggest any legislative intent to exempt credit unions from these costs. Absent clear evidence that the legislature intended to free credit unions from such costs, we conclude that sections 125.402 and 125.403 do not authorize credit unions to recover from the investigating authority the costs of retrieving and producing documents in response to a grand jury subpoena.

You also ask whether canceled checks are in the "possession" of a credit union for purposes of a grand jury subpoena where the canceled checks are retained by a third-party processor from whom they must be retrieved by the credit union. *See* TEX. CODE CRIM. PROC. ANN § 24.02 (Vernon 1989) (if a witness has in his possession any thing desired as evidence, subpoena may direct that the witness produce it in court). The Code of Criminal Procedure does not define "possession" but instructs us to construe the term in accordance with its ordinary meaning. *See* TEX. CODE CRIM. PROC. ANN. art. 3.01 (Vernon 1977). In doing so, we must consider the context in which the term appears. *See Bingham v. State*, 913 S.W.2d 208, 209-10 (Tex. Crim. App. 1992). We are also instructed to construe the code liberally, "so as to attain the objects intended by the Legislature: The prevention, suppression and punishment of crime." TEX. CODE CRIM. PROC. ANN. art. 1.26 (Vernon 1977).

"Possession" ordinarily means "the holding or having of something (material or immaterial) as one's own, or in one's control; actual holding or occupancy, as distinct from ownership." XII OXFORD ENGLISH DICTIONARY 172 (2d ed. 1989). In the context of a subpoena for the production

of documents, the term "possession" includes not only something that a person actually holds, but something that the person has a right to obtain, even if the thing is actually held by another party. A grand jury subpoena for documentary evidence generally reaches all documents under the control of the person or corporation ordered to produce it, the test being one of control and not of location. *See Matter of Marc Rich & Co., A.G.*, 707 F.2d 663, 667 (2d Cir.), *cert. denied*, 463 U.S. 1215 (1983) (holding that grand jury witness could not resist production of documents on ground that documents were located abroad); *Ex parte Gould*, 132 S.W. 364, 369 (Tex. Crim App. 1910) (subpoena duces tecum defined as a process for commanding a person to produce document he has in his possession or control).

Consequently, if a credit union has a right to obtain the canceled checks of its customers that are held by a third-party check processor, it might be said that the checks are in the "possession" of the credit union for purposes of complying with a grand jury subpoena, even though the canceled checks are in the physical possession of the third-party processor. *See generally Ex parte Gould*, at 132 S.W. at 365 (agent of telegraph company commanded to produce messages ordering intoxicating liquors). Whether canceled checks are indeed in the possession of a credit union in any particular case cannot be decided by this office, but must be determined on the facts of that particular case.

## S U M M A R Y

A credit union is not entitled to recover the reasonable costs of retrieving and producing documents in response to a grand jury subpoena.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee